**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FRESHWATER ACCOUNTABILITY PROJECT, | ) ) ) | CIVIL ACTION NO. |
| Plaintiff, | ) ) | JUDGE: |
| v. | ) ) | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| PATRIOT WATER TREATMENT, LLC, | ) ) | |
| and | ) ) | |
| CITY OF WARREN, OHIO | ) ) | |
| Defendants. | ) ) ) ) | |

COMPLAINT

Plaintiff FreshWater Accountability Project ("FWAP") brings this action pursuant to the citizen suit provision of the Clean Water Act, 33 U.S.C. § 1365, and avers the following:

NATURE OF THE ACTION

1.  FreshWater Accountability Project brings this citizen suit under the citizen enforcement provision of the Clean Water Act, 33 U.S.C. § 1365, and seeks declaratory and injunctive relief, the assessment of civil penalties, and an award of litigation costs and fees to address both the City of Warren ("Warren") and Patriot Water Treatment, LLC's ("Patriot") violations of the Clean Water Act.

2.  Defendant Patriot has operated and continues to operate its Centralized Waste Treatment Facility in violation of the Clean Water Act. Specifically:

      a.  Patriot has violated and continues to violate the numeric effluent standards and limitations of the pretreatment standards established in Patriot's Administrative Order, Warren's local ordinances, and Patriot's Permits-to-Install;

      b.  Patriot has violated and continues to violate the reporting requirements contained in its Administrative Order and Warren's local ordinances;

      c.  Patriot has violated and continues to violate the general prohibitions contained in its Administrative Order, Warren's local ordinances, and National Pretreatment Categorical Standards by impairing the operation and efficiency of Warren's Water Pollution Control Facility and by causing Warren's effluent to exceed the effluent standards in its NPDES permit.

3.    Defendant City of Warren has operated and continues to operate its Water Pollution Control Facility in violation of the Clean Water Act.  Specifically:

      a.  Warren has violated and continues to violate the numeric effluent standards and limitations in its NPDES permit.

      b.  Warren has violated and continues to violate its NPDES permit by failing to issue adequate control mechanisms to Patriot, a significant industrial user, to ensure compliance with pretreatment standards.

      c.  Warren has violated and continues to violate its NPDES permit by failing to develop and enforce local limits for Barium, a pollutant that passes through the Water Pollution Control Facility and into the Mahoning River.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), and 33 U.S.C. § 1365(a) (Clean Water Act).

5.      This Court may issue a declaratory judgment and further relief pursuant to 20 U.S.C. § 2201 & 2202.

6.      FreshWater Accountability Project gave notice of the violations alleged in this Complaint, and their intent to file suit, on April 25, 2017, prior to commencement of this lawsuit. FreshWater Accountability Project provided such notice to Patriot Water Treatment, LLC, the City of Warren's Water Pollution Control Department, and all other persons or entities required by the Section 505 of the Clean Water Act. A copy of the notice letter is attached as Exhibit 1 and incorporated herein.

7.      More than sixty (60) days have passed since FreshWater Accountability Project served notice. The violations complained of in the notice have not ceased.

8.      Venue is proper in this jurisdiction because the city of Warren's publically owned wastewater treatment works (the "Warren POTW") and the Patriot Water Treatment Facility both reside in this district, and because a substantial part of the events or omissions giving rise to the claims occurred there. 28 U.S.C. § 1391(b)(1) & (2). Both the Warren POTW and the Patriot Water Treatment facility reside in Trumbull County. 28 U.S.C. § 1391(c)(2). The unlawful discharges giving rise to the claims occurred at and around the Warren POTW and the Patriot Water Treatment facility, which are both located in Trumbull County.

9.      Venue is proper in this judicial district because the source of the unlawful discharges are located there. 33 U.S.C. §1365(c)(1).

PARTIES

10.     Defendant, Patriot Water Treatment, LLC ("Patriot"), is a domestic business that was incorporated in the State of Ohio on April 27, 2009 with the following registered office

address: 7716 Depot Rd. Unit 1, Lisbon, OH 44432. Patriot Water Treatment, LLC's Ohio Department of State corporate entity number is 1853437. Patriot Water Treatment, LLC's principal place of business is Trumbull County, Ohio.

11. Patriot is the owner and operator of a Centralized Waste Treatment Facility (the "Patriot Facility") located at 2840 Sferra Avenue, Warren, Trumbull County, Ohio. The Patriot Facility accepts and pretreats wastewater from oil and gas producers extracting from the Marcellus and Utica shale using the hydraulic fracturing process, in addition to wastewater from other industrial users. Through a single discharge stream, the Patriot Facility then discharges this pretreated effluent to the City of Warren's sewer system to travel to Warren's publicly owned wastewater treatment works for further treatment and ultimate disposal into the Mahoning River.

12. Defendant City of Warren ("Warren") is a municipality in Trumbull County, Ohio. The City of Warren, through its Water Pollution Control Department, owns and operates a publicly owned wastewater treatment works ("POTW"), located at 2323 Main Avenue SW, Warren, Trumbull County, OH (the "Warren POTW").

13. Warren regulates the discharge from the Patriot Facility to the Warren POTW through an Administrative Order issued to the Patriot Facility.

14. Plaintiff, FreshWater Accountability Project ("FWAP"), is a nonprofit organization with a mission to preserve freshwater supplies and other valuable natural resources through education and community action and is dedicated to promoting health by protecting the environment. FWAP has members who live, work, and recreate in and near Warren, OH and who live, work, and recreate in and near the Mahoning River.

15. FreshWater Accountability Project and its members have aesthetic and recreational interests in the Mahoning River, and FWAP members reside in the vicinity of the City of Warren's POTW plant and the Patriot Facility. FreshWater Accountability Project's members have suffered injuries, are presently suffering injuries, and will continue to suffer injuries that are directly traceable to the activities of the Warren POTW and the Patriot Facility, and that are alleged in this Complaint. FreshWater Accountability Project and its members have suffered, are presently suffering, and will continue to suffer, actual and threatened injury to their health and welfare due to violations of the Clean Water Act as described in this Complaint. FreshWater Accountability Project has members who have stopped recreating in the area around the Warren POTW and the Mahoning River as a result of the activities of the Warren POTW and the Patriot Facility; and whose enjoyment of the Mahoning River, and the organisms who reside in and around it, has diminished as a result of the Warren POTW and the Patriot Facility's activities. Without redress for those violations, FreshWater Accountability Project and its members will continue to suffer injuries. Providing the relief requested in this Complaint will redress those injuries.

16. FreshWater Accountability Project member Tom Smith has lived in Girard, Ohio his entire life. Tom Smith has been a member of FWAP since 2017. Mr. Smith has recreated in the Mahoning River since 2011 by kayaking, canoeing, and taking his small fishing boat out on the river. Mr. Smith has specific, personal, health, environmental, and aesthetic interests in the water quality of the Mahoning River. Mr. Smith's full declaration of interest is attached hereto as Exhibit 2.

17.     Neither the claims asserted nor the relief requested in this Complaint requires the participation of any individual member of FreshWater Accountability Project.

18.     The interests that FreshWater Accountability Project seeks to protect are germane to its purpose.


STATUTORY AND REGULATORY BACKGROUND

19.     The goal of the Clean Water Act is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

20.     The Clean Water Act prohibits the discharge of any pollutant by any person into the navigable waters of the United States without a permit. 33 U.S.C. § 1311(a).

21.     The Citizen Suit provision of the Clean Water Act ("CWA") authorizes "any citizen" to "commence a civil action on his own behalf…against any person…who is alleged to be in violation of (A) an effluent standard or limitation under [the Act] or (B) an order issued by an Administrator or a State with respect to such a standard or limitation." 33 U.S.C. § 1365(a)(1).

22.     "Effluent standard or limitation" includes a National Pollution Discharge Elimination System Permit ("NPDES Permit") or condition thereof pursuant to 33 U.S.C. § 1342, and prohibitions, effluent standards, or pretreatment standards pursuant to 33 U.S.C. § 1317. 33 U.S.C. § 1365(f).

23.     The CWA defines "person" as including corporations or municipalities. 33 U.S.C. § 1362(5).

24.     The United States Environmental Protection Agency ("U.S. EPA") administers the Clean Water Act within the context of cooperative federalism. While always retaining its

oversight role, the Agency can delegate administration of parts or all of the statute to states.

25. Under section 402(b), the Administrator of the Environmental Protection Agency has authorized the OEPA to administer various aspects of the Clean Water Act, including the issuance of National Pollutant Discharge Elimination System ("NPDES") permits. 33 U.S.C. § 1342(b).

26. Warren's POTW NDPES Permit 3PE00008 is a permit issued under 33 U.S.C. § 1342. Therefore, violations of Warren POTW's NPDES permit are enforceable under the citizen suit provision of the CWA.

27. Section 307 of the CWA establishes a federal pretreatment program for the regulation of discharges from industrial facilities to publicly owned treatment works. 33 U.S.C. § 1317(b)-(e).

28. Section 307(d) of the Act makes it "unlawful for any owner or operator of any source to operate any source in violation of any such effluent standard or prohibition or pretreatment standard." 33 U.S. C § 1317(d).

29. Moreover, "where specific prohibitions or limits on pollutants or pollutant parameters are developed by a POTW in accordance with [40 C.F.R. § 403.5(C)], such limits shall be deemed Pretreatment Standards for the purposes of Section 307(d) of the Act." 40 C.F.R. § 403.5(d).

30. The U.S. EPA has delegated authority to implement Ohio's pretreatment program to the Ohio Environmental Protection Agency ("OEPA").

31. OEPA has delegated pretreatment program responsibilities to local governments, but may also regulate industries when local authorities are unable to perform the regulatory role effectively. Ohio Rev. Code § 3745-3-03.

32. The City of Warren has an OEPA-approved pretreatment program, meaning Warren has been delegated authority to carry out Clean Water Act pretreatment program requirements.

33. Warren manages its delegated pretreatment authority through local ordinances and issues industrial user permits for significant industrial users in the form of Administrative Orders.

34. Warren regulates Patriot as a Centralized Waste Treatment Facility through such an administrative order, the most recent of which Warren issued February 28, 2017. The Patriot Facility's Administrative Order is attached as Exhibit 3 and incorporated herein.

35. A citizen suit, pursuant to 33 U.S.C. § 1365, may be maintained for violations of these local ordinances, pretreatment Administrative Orders, and pretreatment standards under Section 307 of the Act.


FACTUAL BACKGROUND

*Permitting and Operation of the Patriot Facility*

36. The Patriot Facility is a Centralized Waste Treatment Facility ("CWT facility") that accepts wastewater from oil and gas producers extracting from the Marcellus and Utica shale using the hydraulic fracturing process, in addition to wastewater from other industrial users.

37. Sometime in 2010, the OEPA first issued Patriot a permit to install and operate a water treatment facility designed to treat oil and gas waste. The permit, in conjunction with the

Warren POTW's NPDES Permit, allowed Patriot to discharge its waste to the Warren POTW.

38. Upon information and belief, sometime in May of 2011, the OEPA determined that disposing of oil and gas wastewater, or brine, either directly or through a publically owned treatment works was not authorized by Ohio law. *See* OEPA letter dated May 16, 2011, attached as Exhibit 4 and incorporated herein.

39. Most publicly owned treatment works, such as Warren's POTW, are designed to treat pollutants found in municipally-generated wastewater, as opposed to industrial wastewater. Wastewater from oil and gas extraction in particular contains high concentrations of dissolved solids (or salts), as well as radioactive elements, metals, chlorides, sulfates, and other constituents that POTWs are not designed to remove.

40. Accordingly, in June of 2016 the U.S. EPA issued a final rulemaking requiring that "[t]here shall be no discharge of wastewater pollutants associated with production, field exploration, drilling, well completion, or well treatment for unconventional oil and gas extraction…into publicly owned treatment works." *See* 40 C.F.R. § 435.33. Compliance with this zero discharge requirement was extended by the U.S. EPA for existing sources until August 29, 2019. 81 FR 88127.

41. Despite these issues and concerns, Patriot continues to discharge, and Warren continues to accept, waste from unconventional oil and gas drilling.

42. Through a single discharge stream, the Patriot Facility discharges pretreated effluent to the City of Warren's sewer system to travel to the Warren POTW for further treatment and ultimate disposal into the Mahoning River.

43. Segments of the Mahoning River are currently designated as impaired for aquatic life, with major municipal point sources listed among the sources of impairment.

44. The Patriot Facility is regulated by two OEPA issued permits-to-install (PTI 816662 and PTI 748163) and an Industrial User Pretreatment Permit in the form of an Administrative Order issued by the City of Warren's Water Pollution Control Department. PTI 816662 and PTI 748163 are attached as Exhibit 5 and Exhibit 6, respectively, and incorporated herein.

45. Despite the fact that Patriot is authorized to accept and discharge both industrial and oil and gas waste, there is one discharge waste stream from the Patriot Facility.

46. Prior to March 2017, there were two Administrative Orders governing the single discharge from the Patriot Facility: an Administrative Order issued April 20, 2011 for oil and gas wastewater and an Administrative Order issued March 12, 2015 for other wastewaters. The April 20, 2011 Administrative Order regulated the oil and gas wastewater using limits based on 40 CFR 437, subpart C, the Organics Treatment and Recovery Subpart of the national pretreatment categorical standards for CWT facilities. The March 12, 2015 Administrative Order regulated other industrial wastewater under Warren's local limits established in ordinance and contained none of the pretreatment categorical standards for CWT facilities in 40 CFR 437.

47. Beginning in March 2017, discharge from the Patriot Facility is regulated by a single Administrative Order issued February 28, 2017. The February 28, 2017 Administrative Order contains limits based on 40 CFR 437, subpart A, the Metals Treatment and Recovery Subpart of the pretreatment categorical standards for CWT facilities.

48.    Hydraulic fracturing wastewater is known to have high levels of Total Dissolved Solids ("TDS"), Total Suspended Solids ("TSS"), radionuclides, organic compounds, and heavy metals.

49.    High concentrations of TSS, TDS, and chloride have been found in drinking water sources downstream of discharging facilities that accept hydraulic fracturing wastewater, and effluent from CWTs accepting hydraulic fracturing wastewater has been found to contain elevated bromide and radium concentrations.

50.    Bromide can combine with naturally occurring organic matter to form disinfection by-products ("DBPs") called trihalomethanes, which are associated with liver, kidney, and nervous system problems.

51.    Patriot's current Administrative Order contains a limit of 50,000 mg/L for TDS for the Patriot Facility's oil and gas flow.  This same limit also exists in Patriot's PTI 748163.

52.    Despite Patriot having one discharge stream to the Warren sewer, Patriot's Industrial flow is regulated under a separate portion of its Administrative Order, which provides no limit for TDS.

53.    Due to the naturally occurring radionuclides widely distributed in the earth's crust, hydraulic fracturing often produces some radioactive waste.  Waste from the Marcellus shale in particular is known to have high uranium content and particularly high levels of radium-226.  Radium-226 has a half-life of 1,622 years, so if it is dispersed in the environment, it can persist for a long period of time.

54.    The radiological components of wastewater from hydraulic fracturing present problems for even the most advanced treatment facilities, and any residual wastes that are created may have gamma radiation emissions greater than background levels in the environment.

55.   Despite the knowledge of the unique implications of treating hydraulic fracturing wastewater, neither Patriot's Administrative Order nor Warren POTW's NPDES permit contains limitations for chloride, bromide, or radium.

56.   Patriot's Administrative Order and Warren's Local Ordinance 924.03 contain a provision prohibiting the discharge of "any wastewater containing any radioactive wastes or isotopes of such half-life or concentration, which exceeds limits established by [Warren] in compliance with State or Federal regulations." However, Patriot's Administrative Order does not require monitoring or contain limits for radium-226 or radium-228.

57.   Barium is one of the most abundant inorganic chemicals in drilling fluids and produced waters from some locations and can be naturally occurring or is most-often added intentionally to drilling fluids as a weighting agent due to its high density and low aqueous solubility. Wastewater from the hydraulic fracturing process is known to have high concentrations of barium.

58.   Patriot's Administrative Order contains no limit for barium.

59.   Publicly available Monthly Compliance Reports submitted by Patriot to Warren document that Patriot has repeatedly exceeded standards in its Administrative Order for Zinc, Molybdenum, Ammonia, Chemical Oxygen Demand ("COD"), TSS, and TDS.

*Permitting and Operation of the Warren POTW*

60.   Discharge from the Warren POTW to the Mahoning River is governed by Warren's NPDES permit 3PE00008, attached as Exhibit 7 and incorporated herein.

61.   The Warren POTW has been in significant non-compliance with the TSS limit in its NPDES permit for at least a year, and continues to be in significant non-compliance with this limit.

62. On June 7, 2017 the OEPA issued Warren a NOV for violating the TSS standards in its NPDES permit during the months of January 2017, February 2017, and March 2017, and stating that Warren is in significant noncompliance for TSS as a result of these exceedences. The NOV also cited the Warren POTW for violations of its reporting and sampling requirements for Dissolved Orthophosphate for April 2017. The June 7, 2017 notice is attached as Exhibit 8 and incorporated herein.

63. Warren has identified the Patriot Facility as one source contributing to the Warren POTW consistently exceeding the TSS limits found in its NPDES permit.

64. Publically available Monthly Compliance Reports submitted by Patriot to Warren document consistently high levels of TDS contained in Patriot's effluent received by Warren.

65. Discharge from the Patriot Facility to the Warren POTW containing high levels of TDS interferes with the Warren POTW's ability to process its sludge.

66. Upon information and belief, Patriot's discharge contains higher TDS levels when Patriot is processing wastewater from hydraulic fracturing operations, and in turn, the Warren POTW experiences pass through and/or interference with its operations when Patriot is discharging effluent from processing hydraulic fracturing wastewater.

67. Publicly available discharge monitoring reports demonstrate that Warren has been in significant noncompliance with its Barium preliminary effluent limit since at least 2012.

68. March 20, 2015, the OEPA issued Warren a NOV for violating the barium standards in its NPDES permit. The NOV cites Warren for consistently exceeding its barium preliminary effluent limit, failing to report exceedences of that limit, failing to reduce the effluent concentration, and failing to request a compliance schedule. The NOV explains

that the barium standards are designed to prevent violations of the water quality standard for barium, which is based on the chronic in-stream concentrations that adversely affect aquatic life.  The March 20, 2015 NOV is attached as Exhibit 9 and incorporated herein.

69.    Warren has identified Patriot Water Treatment, LLC as one source of its Barium exceedance problem, and publicly available Monthly Compliance Reports submitted by Patriot to Warren document consistently high levels of Barium contained in Patriot's effluent.

70.    Despite accepting and discharging pretreated oil and gas wastewater, Warren POTW's NPDES permit contains no TDS limit, and no limits or monitoring requirements for radium-226 or radium-228.

*Warren's Regulation of the Patriot Facility*

71.    Following OEPA's 2015 Pretreatment Audit Inspection of Warren's industrial pretreatment program, in a letter dated June 2, 2015, OEPA informed Warren that it was incorrectly regulating the Patriot Facility by regulating the Patriot Facility's single discharge stream through two Administrative Orders, one that applied to oil and gas wastewater and one that applied to other wastewater.  The Administrative Order that applied to oil and gas water included limits based on 40 CFR 437 Subpart C, the Organics Treatment and Recovery Subpart of the national pretreatment categorical standards for CWT facilities.  The Administrative Order that applied to other wastewater contained no 40 CFR 437 limits.  The letter instructed Warren that it must immediately issue to Patriot an Administrative Order that regulates all of the Patriot Facility's discharge under 40 CFR 437.16, the Metals Treatment and Recovery Subpart of the

national pretreatment categorical standards for CWT facilities. The June 2, 2015 letter is attached as Exhibit 10 and incorporated herein.

72. December 21, 2016 the OEPA issued Warren a Notice of Violation ("NOV") for violating Part II.BB.5 of its NPDES Permit 3PE00008, which requires Warren to issue control mechanisms to significant industrial users that contain effluent limits based on applicable pretreatment standards, including pretreatment categorical standards. The NOV was for Warren's failure to issue one Administrative Order governing the Patriot Facility's single discharge using the limits established under 40 CFR 437 Subpart A, Metals Treatment. The December 21, 2016 NOV is attached as Exhibit 11 and incorporated herein.

73. On February 28, 2017, Warren issued an Administrative Order to Patriot applying 40 CFR 437 Subpart A, Metals Treatment effluent limits to Patriot's entire discharge stream.

74. The February 28, 2017 Administrative Order provides two sets of regulations for Patriot's single discharge stream. One sets a limit of 50,000 mg/L for TDS for the Patriot Facility's oil and gas flow. The other sets no limit for TDS for Patriot's industrial flow.

75. Warren has issued Patriot Notifications of Non-compliance regarding Patriot's failure to meet its reporting requirements on at least three occasions, including June 27, 2016, July 29, 2013, and June 3, 2013. These notifications of non-compliance are attached as Exhibit 12 and incorporated herein.

76. Warren issued Patriot a Notification of Non-compliance on April 6, 2015, for exceedences of copper, zinc, and lead standards contained in its Administrative Order and local ordinances. These exceedances of copper, zinc, and lead standards occurred on February 26, 2015 and an additional exceedance for copper occurred on March 10, 2015.

77. Warren issued Patriot a Notification of Non-compliance on July 12, 2016 for violating the limit for zinc contained in its Administrative Order and local ordinances on June 14, 2016.

78. Warren issued Patriot a Notification of Non-compliance on October 3, 2016 for violating the limit for zinc contained in its Administrative Order and local ordinances on August 24, 2016.

79. Warren issued Patriot a Notification of Non-compliance on October 13, 2016 for violating the limit for zinc contained in its Administrative Order and local ordinances on September 27, 2016.

80. April 6, 2015; July 12, 2016; October 3, 2016;and October 13, 2016 notifications of Non-compliance are attached as Exhibit 13 and incorporated herein.

*The Alleged Violations are Continuing*

81. The violations alleged in this Complaint have occurred, are continuing, and will continue unless the relief requested is granted.

82. The violations alleged in this Complaint are continuous, or they are intermittent or sporadic and have a continuing likelihood of recurrence.

83. Patriot and Warren, having sole access to many available records and information regarding Warren POTW's operation and efficiency and Patriot's effluent, are in the best position to determine the precise number of violation events.

*No Action Taken by the State of Ohio or the U.S. EPA Statutorily Precludes this Citizen Suit*

84. The Clean Water Act provides that a citizen suit claim brought under 33 U.S.C. 1365(a) may be precluded if "the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require

compliance with the standard, limitation, or order [that the plaintiff in the citizen suit alleges was violated]." 33 U.S.C. 1365(b)(2).

85. Neither the State of Ohio nor the U.S. EPA has commenced a civil action to address the violations described in this Complaint.

*Consequences of the Defendants' Unlawful Actions*

86. The Defendants' effluent discharges are endangering the health, safety, and welfare of the public and the environment, including the Plaintiff and its members.

87. Patriot's violations of reporting requirements prevent accurate measurements of compliance and enforcement of effluent limitations and water quality standards designed to protect human health and the environment.

88. Warren's violations of its NPDES permit, including its failure to establish adequate control mechanisms for the Patriot Facility and set local limits for Barium, prevent accurate measurements of compliance and enforcement of effluent limitations and water quality standards designed to protect human health and the environment.

89. Total Suspended Solids ("TSS") is a measurement of the total amount of organic and inorganic particles dispersed in water. Excessive amounts of TSS in a surface waterbody can constitute a major ecosystem stressor by negatively affecting biota directly and by negatively impacting important habitat. High levels of TSS in surface water can negatively impact fish populations, making fish unable to see or feed properly, clogging their gills, and suffocating their eggs and larvae. This can lead to an overall decrease in the health of fish populations, and some populations may be severely impacted by even small increases in TSS concentrations. Excessive TSS can also have detrimental impacts on aquatic invertebrates through clogging their filtration mechanisms, hindering

respiration and ingestion, and causing changes in light attenuation that can reduce feeding efficiency, and in some cases leading to death. Even small increases in TSS levels can negatively impact the growth and reproduction of some freshwater mussel species, including many of the endangered freshwater mussel species. Higher TSS levels can also serve as carriers of toxics, which cling to suspended particles.

90.    Total Dissolved Solids "TDS" is a measurement of inorganic salts, organic matter, and other dissolved materials in water. TDS can cause toxicity by increasing salinity and changing ionic composition of the water and toxicity of individual ions, which has been shown to limit biodiversity and cause acute and chronic effects in biota. High TDS levels in drinking water sources have also been shown to lead to elevated disinfection byproduct levels in drinking water systems, including elevated levels of total trihalomethanes which can have public health impacts.  Limits on TDS are also effective at reducing bromide levels.

91.    Radium can readily precipitate with barium salts, which may result in radiation being released into the environment.

92.    Zinc is a heavy metal and one of the 129 priority pollutants identified by the U.S. Environmental Protection Agency. Elevated concentrations of zinc in water are toxic to many species of algae, crustaceans, and salmonids, with the impacts being especially strong to molluscs, crustaceans, odonates, and ephemeropterans. Zinc contamination in streams can also lead to fish kills and negative physiological impacts on surviving fish populations. Excess Zinc in mammals can cause copper deficiencies and affect iron metabolism.  Zinc is also a known human skin irritant.

93.     Molybdenum is a heavy metal that dissolves at a high pH.  Elevated Molybdenum can have negative impacts on the kidneys and liver of mammals and has been found to cause acute toxicity and death in cattle and sheep, with cattle being particularly susceptible to toxicity. Studies have associated elevated levels of molybdenum with a form of lower-limb osteoporosis and a gout-like disease in humans.  A two-year study of the impact of molybdenum in drinking water on humans determined 0.2 mg/L to be the no-observed-adverse-effect-level for molybdenum in drinking water, from which the World Health Organization has estimated a health-based limit of 0.07 mg/L.

94.     High levels of ammonia in water can lead to toxic buildup in the blood and tissues of aquatic organisms, potentially leading to death. For the protection of aquatic life, U.S. EPA has established ambient water criteria for ammonia in freshwater of 17 mg TAN/L at pH 7 and 20°C.

95.     Chemical Oxygen Demand ("COD") is an indicator of the amount of dissolved oxygen that will be needed by microorganisms in the receiving stream to degrade the organic, and some inorganic, compounds in the effluent.  COD is an indirect indicator of the organic compound pollutants of wastewater effluent.  The discharge of effluent containing high levels of COD into a stream or river accelerates bacterial growth in the river, consuming, and in turn, reducing the oxygen levels in the river.  This can lead to the diminishing of oxygen levels in the river that are lethal for aquatic fish and insects.

96.     Carbonaceous Biochemical Oxygen Demand ("CBOD") measures the potential of wastewater to deplete the oxygen level of receiving streams. CBOD is used to determine the extent to which a waste stream will contaminate a receiving stream by depriving the organisms in the stream of oxygen.

97.     E. Coli are a type of fecal coliform bacteria found in the intestines of animals and

humans. Exposure to water contaminated with E. Coli bacteria can result in

gastrointestinal tract infection, including nausea, vomiting, diarrhea, and fever. High E.

Coli levels are a strong indication of fecal pollution, which can pose serious health threats

to those exposed to the contaminated water.  In addition to gastrointestinal infection,

humans exposed to fecal pollution may suffer eye infections, skin infections, respiratory

illness, and ear, nose, and throat infections.  The presence of E. Coli can also be

indicative of the presence of other pathogens, such as viruses and protozoa, that are

harmful to human health.

VIOLATIONS OF THE CLEAN WATER ACT BY DEFENDANT PATRIOT

COUNT ONE
*Patriot's Discharge of Pollutants in Excess of the Numeric Effluent Limitations Contained in its
Administrative Order, Local Ordinances, and National Pretreatment Categorical Limits*

98.     Plaintiff realleges and incorporates by reference herein all above allegations and

aforementioned exhibits.

99.     Patriot's Administrative Order and Warren's local ordinance 924.06 sets an effluent

limitation for zinc of 1.210 mg/L for the daily maximum.  Patriot violated this limitation

on, but not limited to, the following dates:

| Date | Reading (mg/L) | Limit (mg/L) |
|------|----------------|--------------|
| Feb. 26, 2015 | 1.300 | 1.2010 |
| Jun. 14, 2016 | 4.150 | 1.210 |
| Aug. 24, 2016 | 2.920 | 1.210 |
| September 27, 2016 | 7.870 | 1.210 |

100.   Patriot's Administrative Order and Warren's local ordinance 924.04 sets 0.699 mg/L as

the daily maximum for molybdenum.  Patriot exceeded this value on, but not limited to,

the following dates:

| Date | Reading (mg/L) | Limit (mg/L) |
|------|----------------|--------------|
| May 26, 2016 | 1.59 | 0.699 |
| Jun. 30, 2016 | 3.02 | 0.699 |
| Aug. 24, 2016 | 0.87 | 0.699 |
| Sept. 27, 2016 | 1.17 | 0.699 |

101.   Patriot's Administrative Order and Warren's local ordinance 924.06 sets 35 mg/L as the

daily maximum for Ammonia.  Patriot exceeded this value on, but not limited to, the

following dates:

| Date | Reading (mg/L) | Limit (mg/L) |
|------|----------------|--------------|
| Jul. 21, 2014 | 43 | 35 |
| Aug. 11, 2014 | 91 | 35 |
| Sept. 16, 2014 | 104 | 35 |
| Feb. 26, 2015 | 134 | 35 |
| May 19, 2015 | 51.5 | 35 |
| June 9, 2015 | 81.9 | 35 |
| June 24, 2015 | 52.0 | 35 |
| Sept. 15, 2015 | 63.9 | 35 |
| Nov. 26, 2015 | 38.9 | 35 |
| Jan. 29, 2016 | 42.7 | 35 |
| Feb. 26, 2016 | 50.8 | 35 |
| Mar. 18, 2016 | 45.4 | 35 |
| Apr. 29, 2016 | 107 | 35 |
| May 26, 2016 | 97.8 | 35 |
| Jun. 30, 2016 | 42.6 | 35 |
| Sept. 27, 2016 | 59.3 | 35 |
| Nov. 21, 2016 | 58.8 | 35 |

102.   Patriot's Administrative Order and Warren's local ordinance 924.06 sets an effluent

limitation for COD of 600 mg/L for the daily maximum. Patriot exceeded this value on,

but not limited to the following dates:

| Date | Reading (mg/L) | Limit (mg/L) |
|---|---|---|
| May 20, 2014 | 1900 | 600 |
| Jun. 24, 2014 | 2340 | 600 |
| Jul. 21, 2014 | 1720 | 600 |
| Aug. 11, 2014 | 1900 | 600 |
| Sept. 16, 2014 | 5460 | 600 |
| October 28, 2010 | 1220 | 600 |
| November 21, 2014 | 1370 | 600 |
| Dec. 14, 2014 | 774 | 600 |
| Jan. 9, 2015 | 840 | 600 |
| Feb. 26, 2015 | 7120 | 600 |
| Mar. 18, 2015 | 1900 | 600 |
| Apr. 28, 2015 | 1550 | 600 |
| May 19, 2015 | 2740 | 600 |
| June 9, 2015 | 4090 | 600 |
| June 24, 2015 | 2650 | 600 |
| July 23, 2015 | 1720 | 600 |
| Aug. 26, 2015 | 1020 | 600 |
| Sept. 15, 2015 | 2450 | 600 |
| Oct. 23, 2015 | 1900 | 600 |
| Oct. 30, 2015 | 1770 | 600 |
| Nov. 26, 2015 | 2450 | 600 |
| Dec. 22, 2015 | 1390 | 600 |
| Jan 29, 2016 | 1680 | 600 |
| Feb. 26, 2016 | 2230 | 600 |
| Mar. 18, 2016 | 8130 | 600 |
| Apr. 29, 2016 | 884 | 600 |
| May 26, 2016 | 5350 | 600 |
| Jun. 30, 2016 | 2940 | 600 |
| Aug. 24, 2016 | 1410 | 600 |
| Sept. 27, 2016 | 7510 | 600 |
| Oct. 25, 2016 | 2830 | 600 |
| Nov. 21, 2016 | 5530 | 600 |

103.    Patriot's Administrative Order and Warren's local ordinance 924.06 sets 60 mg/L as the

allowable daily maximum for Total Suspended Solids ("TSS").  Patriot exceeded this

limit on, but not limited to, the following dates:

| Date | Reading (mg/L) | Limit (mg/L) |
|---|---|---|
| May 20, 2014 | 86 | 60 |
| Jun. 24, 2014 | 80 | 60 |
| Aug. 11, 2014 | 169 | 60 |
| Sept. 16, 2014 | 278 | 60 |
| Oct. 28, 2016 | 69 | 60 |
| Dec. 14, 2014 | 167 | 60 |
| Feb. 26, 2015 | 376 | 60 |
| Mar. 18, 2015 | 472 | 60 |
| Apr. 28, 2015 | 176 | 60 |
| May 19, 2015 | 321 | 60 |
| Jun. 9, 2015 | 436 | 60 |
| Jun. 24, 2015 | 111 | 60 |
| Jul. 23, 2015 | 268 | 60 |
| Aug. 26, 2015 | 170 | 60 |
| Sept. 15, 2015 | 101 | 60 |
| Oct. 23, 2015 | 343 | 60 |
| Oct. 30, 2015 | 101 | 60 |
| Nov. 26, 2015 | 73 | 60 |
| Dec. 22, 2016 | 169 | 60 |
| Jan 29, 2016 | 97 | 60 |
| Mar. 18, 2016 | 240 | 60 |
| Apr. 29, 2016 | 126 | 60 |
| May 26, 2016 | 512 | 60 |
| Jun. 30, 2016 | 264 | 60 |
| Aug. 24, 2016 | 72 | 60 |
| Sept. 28, 2016 | 375 | 60 |
| Nov. 21, 2016 | 230 | 60 |

104.    Patriot's Administrative Order and Warren's local ordinance sets 1500 mg/L as the daily maximum for Total Dissolved Solids ("TDS").  Patriot exceeded this value on, but not limited to, the following dates:

| Date | Reading (mg/L) | Limit (mg/L) |
|---|---|---|
| May 20, 2014 | 30,200 | 1500 |
| Jun. 24, 2014 | 12,000 | 1500 |
| Jul. 21, 2014 | 38,800 | 1500 |
| Aug. 11, 2014 | 33,700 | 1500 |
| Sept. 16, 2014 | 50,000 | 1500 |
| Oct. 28, 2016 | 16,200 | 1500 |
| November 21, 2014 | 32,000 | 1500 |
| Dec. 14, 2014 | 20,900 | 1500 |
| Jan. 9, 2015 | 10,700 | 1500 |

| | | |
|---|---|---|
| Feb. 26, 2015 | 102,000 | 1500 |
| Mar. 18, 2015 | 33,600 | 1500 |
| Apr. 28, 2015 | 27,000 | 1500 |
| May 19, 2015 | 40,400 | 1500 |
| June 9, 2015 | 99,600 | 1500 |
| June 24, 2015 | 12, 100 | 1500 |
| July 23, 2015 | 40,000 | 1500 |
| Aug. 26, 2015 | 25,100 | 1500 |
| Sept. 15, 2015 | 55,200 | 1500 |
| Oct. 23, 2015 | 39,900 | 1500 |
| Oct. 30, 2015 | 27,800 | 1500 |
| Nov. 26, 2015 | 49,200 | 1500 |
| Dec. 22, 2016 | 38,900 | 1500 |
| Jan 29, 2016 | 50,800 | 1500 |
| Feb. 26, 2016 | 65,300 | 1500 |
| Mar. 18, 2016 | 48,200 | 1500 |
| Apr. 29, 2016 | 95, 300 | 1500 |
| May 26, 2016 | 51,200 | 1500 |
| June 30, 2016 | 11,100 | 1500 |
| July 27, 2016 | 16,000 | 1500 |
| August 24, 2016 | 12,100 | 1500 |
| September 28, 2016 | 19,500 | 1500 |
| October 25, 2016 | 4,110 | 1500 |
| November 22, 2016 | 10,500 | 1500 |

105.    These violations of the numeric effluent limitations contained in the Patriot Facility's

Administrative Order, Warren's Local Ordinances, and national pretreatment categorical

limits are violations of the Clean Water Act.

106.    Discharging these pollutants to the Warren sewer at levels exceeding pretreatment

standards may be harmful to human health and the environment, especially the aquatic

life of the Mahoning River.


COUNT TWO
*Patriot's Interference and/or Pass Through Violations*

107.    Plaintiff realleges and incorporates by reference herein all above allegations and

aforementioned exhibits.

24

108. 40 C.F.R. § 403.5 states that "a User may not introduce into a POTW any pollutant(s) which cause Pass Through or Interference," where:

Interference means a discharge which, alone or in conjunction with a discharge or discharges from other sources, both: (1) Inhibits or disrupts the POTW, its treatment processes or operations, or its sludge processes, use, or disposal; and (2) Therefore is the cause of a violation of any requirement of the POTW's NPDES permit (including an increasing in the magnitude or duration of a violation).

109. Warren Ordinance 924.03 and Patriot's Administrative Order prohibit the discharge of any toxic substances, chemical elements or compounds in quantities sufficient to impair the operation or efficiency of the sewage treatment plant or that will pass through the sewage treatment plant and cause the effluent thereof to exceed NPDES permit limits.

110. Both of Patriot's OEPA-issued permits-to-install, PTI 816662 and PTI 748163, state that "[a]ll wastewater discharges that will adversely affect the operation, maintenance, or treatment capabilities of the Warren sewer and/or wastewater treatment systems are prohibited."

111. Patriot has violated Section 3, Subpart D of its Administrative Order, its permits-to-install (PTI 816662 and PTI 748163), Warren Ordinance 924.03, and 40 C.F.R. § 403.5 by the high level of Barium it sends to Warren that has caused Warren to repeatedly violate the preliminary effluent standard in Part II.AA of its NPDES permit.

112. Patriot has caused or contributed to the Warren POTW violating its preliminary effluent standard for Barium, contained in Part II.AA of its NPDES permit, on at least 55 occasions since July 17, 2012.

113.    Each time Patriot has caused Warren POTW to violate its Barium preliminary effluent standard amounts to a violation of its Administrative Order, Warren Ordinance 924.03, and 40 C.F.R. § 403.5.

114.    Patriot's discharge of high levels of TDS and TSS into Warren's sewer, repeatedly at levels exceeding those permitted in its Administrative Order, have caused Warren to violate the standards in its NPDES permit.

115.    Patriot has caused or contributed to Warren being in significant non-compliance with the TSS limit in its NPDES permit for at least a year.

116.    The Patriot Facility is the primary source of Warren POTW's state of significant non-compliance with the TSS standards contained in its NPDES permit, and Patriot's acceptance of waste from hydraulic fracturing operations in particular contributes to this problem of noncompliance.

117.    Each instance that Warren has exceeded the TSS limit in its NPDES Permit as a result of high TDS and TSS levels discharging from the Patriot Facility, including the ten violations described in Count Four of this Complaint, constitutes a violation of the Clean Water Act by Patriot.

118.    Warren POTW continues to be in significant non-compliance with the TSS limit in its NPDES permit, and this state of non-compliance is expected to continue so long as Patriot continues to discharge effluent containing high levels of TSS and TDS to the Warren POTW.

119.    Warren POTW's ability to process sludge is impaired and made less efficient as a result of the high concentrations of TDS it receives from Patriot.

120.    Therefore, Patriot's current discharge of effluent containing high levels of TDS amounts

to "discharg[ing], or causing to be discharge[ed]… toxic substances, chemical elements

or compounds in quantities sufficient to impair the operation or efficiency of the sewage

treatment plant," in violation of Warren Ordinance 924.03 and Patriot's Administrative

Order, and therefore the Pretreatment Standards of the Clean Water Act.

121.    Patriot's discharge of high-TDS effluent also constitutes "wastewater discharges that will

adversely affect the operation, maintenance, or treatment capabilities of the

Warren…wastewater treatment systems," which is prohibited by Patriot's permits-to-

install, PTI 816662 and PTI 748163.

122.    These violations of Patriot's Administrative Order, its permits-to-install (PTI 816662 and

PTI 748163), and Warren Ordinance 924.03 are violations of the Clean Water Act.

123.    By impairing Warren's processing abilities and causing or contributing to Warren

discharging pollutants in excess of the effluent limitations contained in its NPDES

permit, Patriot's discharge may be harmful to human health and the environment,

especially the aquatic life in the Mahoning River.

COUNT THREE
*Patriot's Failure to Meet Reporting Requirements*

124.    Plaintiff realleges and incorporates by reference herein all above allegations and

aforementioned exhibits.

125.    Section 4 of Patriot's Administrative Order requires Patriot to conduct self-monitoring of

the pollutants listed in Section 1 of its Administrative Order, and to submit its results to

Warren by the 25th of each month.  If results indicate a violation of pretreatment

standards, Patriot is to notify Warren within 24 hours of becoming aware of the violation.

Patriot is also required to notify Warren upon first awareness of any accidental discharge

that could cause problems to the POTW or violate any prohibited discharge standard. Within 5 days of such an occurrence, Patriot must provide formal written notification to Warren discussing the circumstances of the event and remedial measures.

126. Patriot violated its compliance reporting requirements in its Administrative order and Warren's Ordinance No. 10235/91 on at least the following occasions: April 2013; June 2013; and May 25, 2016.

127. Patriot also violated its reporting requirements each time it discharged to Warren's sewer in such a manner that resulted in Warren POTW violating its NPDES permit or that impaired Warren POTW's operation or efficiency and did not provide Warren with formal notification discussing the circumstances of the occurrence and remedial measures. This includes at least the violations described in Count Three of this Complaint.

128. Each of Patriot's failures to meet its reporting requirements constitutes a violation of the Clean Water Act.

VIOLATIONS OF THE CLEAN WATER ACT BY DEFENDANT WARREN

COUNT FOUR
*Warren's Discharge of Pollutants in Excess of the Numeric Effluent Limitations Contained in its NPDES Permit 3PE00008*

129. Plaintiff realleges and incorporates by reference herein all above allegations and aforementioned exhibits.

130. Warren POTW's NDPES Permit 3PE00008 contains an average weekly concentration limit for TSS of 30 mg/L and a weekly loading limit of 1817 kg/day. Warren's NPDES permit defines "average weekly" discharge limitations as "the highest allowable average of 'daily discharges' over a week, divided by the number of daily discharges measured

during that week," where Week 1 is days 1-7 of the month, Week 2 is days 8-14, Week 3 is days 15-21, and Week 4 is days 22-28. Warren POTW violated these terms in the months of January 2017, February 2017, and March 2017, and on at least the following dates:

| Date | Reading (mg/L) weekly concentration | Reading (kg/day) weekly loading | Reading (kg/day) monthly loading | Limit (mg/l) weekly concentration | Limit (kg/day) weekly loading | Limit (kg/day) Monthly loading |
|------|------|------|------|------|------|------|
| June 15-21, 2015 | 38 | 4615 | 1874 | 30 | 1817 | 1211 |
| Nov. 8-14, 2015 | 43 | 2194 | | 30 | 1817 | 1211 |
| Dec. 22-28, 2015 | 226 | | | 30 | 1817 | 1211 |
| Mar. 25-31, 2015 | 51 | | | 30 | 1817 | 1211 |
| Apr. 8-14, 2016 | 136 | | | 30 | 1817 | 1211 |

131.    Warren POTW's NDPES Permit 3PE00008 sets a Dissolved Oxygen standard of a minimum level of Dissolved Oxygen of 5.0 mg/L.  Warren POTW violated this permit standard on at least the following dates:

| Date | Reading (mg/L) | Limit (min.) (mg/L) |
|------|------|------|
| Oct. 28, 2015 | 2.3 | 5.0 (min.) |
| Apr. 11, 2016 | 4.9 | 5.0 (min) |

132.    Warren POTW's NDPES Permit 3PE00008 sets a weekly limit for COBD of 18 mg/L. Warren POTW violated this permit standard on at least the following dates:

| Date | Reading (mg/L) weekly | Limit (mg/L) weekly |
|------|------|------|

| Dec. 23, 2015 | 47 | 18 |
| Apr. 12, 2016 | 50 | 18 |

133.    Warren POTW's NDPES Permit 3PE00008 sets a standard of a weekly average limit for

E. Coli to be calculated as a measurement of 284 cfu/ml.  Warren POTW violated this

permit standard on at least the following dates:

| Date | Reading (cfu/ml) weekly | Limit (cfu/ml) weekly |
|------|-------------------------|------------------------|
| May 7, 2014 | 1220 | 284 |
| May 8, 2014 | 1100 | 284 |
| May 13, 2014 | 1290 | 284 |
| May 14, 2014 | 3200 | 284 |
| May 15, 2014 | 2900 | 284 |
| Jun. 3, 2014 | 800 | 284 |
| Jun. 17, 2014 | 700 | 284 |
| Jun. 19, 2014 | AK | 284 |
| Jun. 24, 2014 | AK | 284 |
| Jun. 25, 2014 | AK | 284 |
| Jul. 15, 2014 | AK | 284 |
| Aug 5, 2014 | 290 | 284 |
| Aug 12, 2014 | AK | 284 |
| Aug 13, 2014 | AK | 284 |
| Aug 20, 2014 | AK | 284 |
| Aug 21, 2014 | 3100 | 284 |
| Sept. 8, 2014 | 450 | 284 |
| Sept. 11, 2014 | 680 | 284 |
| Oct. 21, 2014 | 400 | 284 |
| May 28, 2015 | 1140 | 284 |
| Jun. 1, 2015 | 3040 | 284 |
| Jun. 15, 2015 | 46000 | 284 |
| Jun. 16, 2015 | 3800 | 284 |
| Jun. 17, 2015 | 7375 | 284 |
| Jun. 18, 2015 | 350 | 284 |
| Jun. 24, 2015 | 675 | 284 |
| Jun. 29, 2015 | 4425 | 284 |
| Oct. 28, 2015 | 1300 | 284 |
| Oct. 29, 2015 | 730 | 284 |
| May 16, 2016 | 5000 | 284 |
| Jul. 18, 2016 | AK | 284 |
| Oct. 3, 2016 | 767 | 284 |
| Oct. 20, 2016 | 2200 | 284 |

## COUNT FIVE
### *Warren's Violation of its Barium Preliminary Effluent Limit*

134.    Plaintiff realleges and incorporates by reference herein all above allegations and aforementioned exhibits.

135.    Part II.AA of the Warren POTW's NPDES permit contains a preliminary effluent limit ("PEL") for barium of 340 ug/L.  This standard is the wasteload allocation for the Warren POTW based on the water quality standards for the Mahoning River.

136.    The Warren POTW's NPDES permit requires Warren to give written notification to the Northeast District OEPA office upon any effluent concentration sample result greater than the PEL.

137.    The Warren POTW's NPDES permit states that if the 30-day average for barium is greater than the average PEL for two or more months during a consecutive six-month period, the permittee must reduce discharge levels to below the PEL.

138.    If the Warren POTW is unable to reduce the barium levels below the PEL within six months after the aforementioned condition has been met, Warren POTW is allowed to request to modify its NPDES permit to contain a compliance schedule for barium, which must include justification for the additional time necessary to reduce barium discharge levels.

139.    The Warren POTW has exceeded its barium PEL on at least 55 occasions, regularly for a period of two or more months during a six-month period.

140.    At no point has Warren submitted to OEPA a request to modify its NPDES permit to contain a compliance schedule for barium.

141.    Each exceedance of the Warren POTW's barium PEL after it exceeded its limitation twice in July and August of 2012 without requesting a compliance schedule, constitutes a violation of a condition of its NPDES permit, and thus a violation of the Clean Water Act, enforceable under the Act's citizen suit provision.

142.    The Warren POTW has exceeded the preliminary effluent standard for barium contained in its NPDES permit on at least the following occasions:

| Date | Reading (ug/L) | Limit (ug/L) |
|---|---|---|
| Jul. 17, 2012 | 411 | 340 |
| Aug. 7, 2012 | 374 | 340 |
| Aug. 21, 2012 | 1170 | 340 |
| Sept. 18, 2012 | 1660 | 340 |
| Oct. 2, 2012 | 773 | 340 |
| Oct.16, 2012 | 875 | 340 |
| Oct. 29, 2012 | 706 | 340 |
| Nov. 6, 2012 | 676 | 340 |
| Nov. 19, 2012 | 1190 | 340 |
| Mar. 5, 2013 | 662 | 340 |
| Apr. 16, 2013 | 400 | 340 |
| Apr. 30, 2013 | 532 | 340 |
| May 21, 2013 | 918 | 340 |
| Jun. 18, 2013 | 1070 | 340 |
| Sept. 16, 2013 | 386 | 340 |
| Oct. 22, 2013 | 451 | 340 |
| Dec. 17, 2013 | 354 | 340 |
| Dec. 30, 2013 | 552 | 340 |
| Mar. 18, 2014 | 585 | 340 |
| Aug. 5, 2014 | 1030 | 340 |
| Sept. 23, 2014 | 600 | 340 |
| Oct. 21, 2014 | 786 | 340 |
| Dec. 30, 2014 | 1220 | 340 |
| Jan. 6, 2015 | 400 | 340 |
| Feb. 17, 2015 | 679 | 340 |
| Mar. 3, 2015 | 1810 | 340 |
| Apr. 21, 2015 | 2180 | 340 |
| May 5, 2015 | 2900 | 340 |
| May 19, 2015 | 1300 | 340 |
| Jun. 2, 2015 | 380 | 340 |
| Jun. 7, 2015 | 547 | 340 |
| Jun. 16, 2015 | 5620 | 340 |

| | | |
|---|---|---|
| Jun. 22, 2015 | 1640 | 340 |
| Jun. 29, 2015 | 1980 | 340 |
| Jun. 30, 2015 | 1340 | 340 |
| Jul. 6 , 2015 | 1240 | 340 |
| Jul. 7, 2015 | 1270 | 340 |
| Jul. 21, 2015 | 498 | 340 |
| Sept. 1, 2015 | 868 | 340 |
| Sept. 9, 2015 | 459 | 340 |
| Sept. 22, 2015 | 1370 | 340 |
| Oct. 6, 2015 | 716 | 340 |
| Oct. 20, 2015 | 660 | 340 |
| Nov. 4, 2015 | 619 | 340 |
| Nov. 17, 2015 | 2540 | 340 |
| Dec. 2, 2015 | 6350 | 340 |
| Dec. 15, 2015 | 3830 | 340 |
| Jan. 5, 2016 | 521 | 340 |
| Febr. 2, 2016 | 540 | 340 |
| Mar. 2, 2016 | 711 | 340 |
| Mar. 15, 2016 | 916 | 340 |
| Apr. 19, 2016 | 1010 | 340 |
| May 3, 2016 | 1490 | 340 |
| May 17, 2016 | 827 | 340 |
| Jun. 2, 2016 | 603 | 340 |

COUNT SIX

*Warren's Failure to Issue Adequate Control Mechanisms to Regulate TDS Levels from Patriot*

143. Plaintiff realleges and incorporates by reference all above allegations and aforementioned exhibits.

144. Warren's NPDES permit 3PE00008 Part II.BB.5 requires Warren to "issue control mechanisms to all industries determined to be Significant Industrial Users as defined in OAC 3745-3-01(FF)," and states that "[c]ontrol mechanisms must meet at least the minimum requirements of OAC-3745-3-03(C)(1)(c)."

145. By its incorporation of OAC-3745-3-03(C)(1)(c), Warren's NPDES permit 3PE00008 requires Warren to "[i]ssue control mechanisms to control each industrial user's

contribution to the POTW to ensure compliance with applicable pretreatment standards and requirements."

146. Warren's current administrative order for Patriot fails to meet this requirement in that it fails to ensure Patriot's compliance with its TDS standard for its Oil and Gas flow.

147. There is one discharge stream from the Patriot Facility into the Warren sewer, yet Warren's Administrative Order for Patriot regulates Patriot's Oil and Gas flow and Patriot's Industrial flow as two separate discharge streams, where Patriot's Oil and Gas flow is subject to a maximum strength of TDS of 50,000 mg/L and Patriot's Industrial flow has no limitation on TDS strength.

148. Patriot's discharge of effluent containing high-TDS levels has impaired the operation and efficiency of the Warren POTW and caused the Warren POTW to be in an ongoing state of significant noncompliance with its NPDES permit.

149. The lack of an adequate control mechanism has led to Patriot's discharge of high-TDS effluent to the Warren POTW at levels that have impaired the operation and treatment capabilities of the Warren POTW and resulted in illegal discharges by the Warren POTW into the Mahoning River.

150. As such, Warren is operating in violation of Part II.BB.5 of its NPDES permit 3PE00008 and the Clean Water Act.

COUNT SEVEN
*Warren's Administrative Order Issued to Patriot Does Not Adequately Regulate or Monitor Radionuclides*

151. Plaintiff realleges and incorporates by reference all above allegations and all aforementioned exhibits.

152. Warren Local Ordinance 924.03, a component of Warren's OEPA approved pretreatment program, prohibits the discharge into Warren's public sewer of "any wastewater containing any radioactive wastes or isotopes of such halflife or concentration which exceeds limits established by the City in compliance with applicable state or federal regulations."

153. Despite this pretreatment standard, the Administrative Order Warren has issued to Patriot contains no requirement for radiological monitoring to ensure the pretreatment standard is met.

154. By its incorporation of OAC-3745-3-03(C)(1)(c), Warren's NPDES permit 3PE00008 requires Warren to "[i]ssue control mechanisms to control each industrial user's contribution to the POTW to ensure compliance with applicable pretreatment standards and requirements."

155. Warren's failure to include requirements for monitoring of radionuclides in Patriot's Administrative Order is a violation of this provision of Warren's NPDES permit, and in turn of the Clean Water Act.

## COUNT EIGHT
### *Warren's Failure to Issue Local Limits for Barium*

156. Plaintiff realleges and incorporates by reference herein all above allegations and aforementioned exhibits.

157. Section BB.4 of Warren's NPDES Permit 3PE00008, requires Warren to "develop and enforce technically based local limits to prevent the introduction of pollutants into the POTW which will interfere with the operation of the POTW, pass through the treatment works, be incompatible with the treatment works, or limit wastewater or sludge use options."

158. Warren's NPDES Permit 3PE00008 gives the waste load allocation for fourteen pollutants, including barium, instructing Warren to "use the following waste load allocation values when evaluating local limits." The permit also requires Warren to "continue to review and develop local limits as necessary."

159. To date Warren has developed local limits for each of the fourteen listed pollutants except barium.

160. Warren has also not placed a barium limit in Patriot's Administrative Order despite Warren remaining in significant noncompliance with the preliminary effluent standard for barium contained in its NPDES permit 3PE00008.

161. By failing to issue a local limit for barium, when elevated levels of barium in the Warren POTW's influent is resulting in pass through of barium into the Warren POTW's final outfall at levels exceeding what is permissible under the Warren POTW's NPDES permit, Warren is violating Section BB.4. of its NPDES permit, in violation of the Clean Water Act.

162. The citizen suit provision of the CWA defines "effluent standard or limitation" to include "a permit or condition thereof issued under [the National pollution discharge elimination system]." Thus, as a violation of Warren's NPDES permit, this violation is enforceable through the citizen suit provision of the CWA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

A. Declare that the Defendants have violated and are in violation of the Clean Water Act as a result of the violations described above.

B. Enjoin the Defendants from further violations of the Clean Water Act.

C. Issue a preliminary and permanent injunction that prevents Patriot from discharging to the Warren POTW until such operation is lawful pursuant to the Clean Water Act.

D. Require, in the form of injunction or mandamus, that, prior to accepting any further wastewater from Patriot, Warren issue an Administrative Order that places a daily maximum TDS limit of 50,000 mg/L for Patriot's entire waste stream, including discharges from oil and gas wastewater processing.

E. Require, in the form of injunction or mandamus, that, prior to accepting any further wastewater from Patriot, Warren issue an Administrative Order requiring radiological testing to be conducted on Patriot's discharge into the Warren sewer.

F. Assess civil penalties against Defendants for $37,500 per day per violation, as provided in 33 U.S.C. §§ 1319(d), 1365(a), and 40 C.F.R. Part 19 (adjustment of civil monetary penalties).

G. Award FreshWater Accountability Project litigation costs, including attorney fees and expert fees, pursuant to Section 505(d) of the Clean Water Act. 33 U.S.C. § 1365(d).

H. Grant such other relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff respectfully requests a jury trial on all issues so triable.

Date: June 27, 2017

Respectfully submitted by:

/s/ Megan M. Hunter

Megan M. Hunter, Esq.

Ohio Bar No. 96035
Email: mhunter@fairshake-els.org


James Yskamp, Esq.
Ohio Bar No. 0093095
Email: jyskamp@fairshake-els.org


Fair Shake Environmental Legal Services
159 S. Main Street, Suite 1030
Akron, OH 44308
Telephone: (234) 571-1970


*Counsel for:*
*FreshWater Accountability Project.*
*P.O. Box 473*
*Grand Rapids, Ohio 43522*

## CERTIFICATE OF SERVICE

I, Megan Hunter, hereby certify that a true and correct copy of the foregoing Complaint was filed electronically and sent to all parties and persons on this 27th day of June 2017, via the means and at the addresses listed below as follows:

April Bott                                               *Via Certified U.S. Mail,*
Bott Law Group, LLC                                      *return receipt requested*
5126 Blazer Parkway
Dublin, OH 43017
*Counsel for Defendant, Patriot Water Treatment, LLC*

Greg Hicks, Law Director
City of Warren Law Department, Civil Division            *Via Certified U.S. Mail,*
391 Mahoning Ave. N.W.                                    *return receipt requested*
Warren, OH 44483

Scott Pruitt, Administrator                              *Via Certified U.S. Mail,*
U.S. Environmental Protection Agency                     *return receipt requested*
1200 Pennsylvania Ave., N.W. (Mailcode: 1101A)
Washington, D.C. 20460

Jeff Sessions, U.S. Attorney General                    *Via Certified U.S. Mail,*
U.S. Department of Justice                               *return receipt requested*
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

Date:  June 27, 2017                    By /s/ Megan M. Hunter
                                        Megan M. Hunter # 96035
                                        *Counsel for Plaintiff*