PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| FRESHWATER ACCOUNTABILITY PROJECT, | CASE NO. 4:17CV1361 |
| Plaintiff, | |
| v. | JUDGE BENITA Y. PEARSON |
| PATRIOT WATER TREATMENT, LLC, *et al.*, | **MEMORANDUM OF OPINION AND ORDER** [Resolving ECF No. 18] |
| Defendants. | |

Pending is Defendant City of Warren, Ohio's ("Warren") Partial Motion to Dismiss. ECF No. 18. The motion seeks dismissal of Counts Six through Eight of Plaintiff's Complaint. Plaintiff Freshwater Accountability Project ("FreshWater") has filed a memorandum in opposition. ECF No. 30. Warren replied. ECF No. 33. For the reasons that follow, Warren's motion is denied.

## I. Background

FreshWater, a non-profit environmental organization suing on behalf of its members, brought this action against Defendants Patriot Water Treatment, LLC ("Patriot") and Warren, under the citizen enforcement suit provision of the Clean Water Act ("CWA"), 33 U.S.C. § 1365. ECF No. 1. FreshWater seeks declaratory and injunctive relief, the assessment of civil penalties, and an award of litigation costs and fees, for alleged violations of the CWA. *Id.* at PageID#: 1, ¶ 1. FreshWater asserts that, Defendants failed to comply with effluent limits and performance standards for industrial wastewater discharge under the National Pollution Discharge Elimination

(4:17CV1361)

System ("NPDES"), Permit No. 3PE00008, regarding the discharge of wastewaster pollutants into the waters of the State of Ohio. *Id.* at PageID#: 2, ¶¶ 2–3.

### A. Clean Water Act

The objective of the CWA, 33 U.S.C. § 1251 *et seq.*, is to, "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To further this goal, the CWA mandates that toxic discharges into the Nation's waterways be monitored and regulated, and thus, requires that dischargers comply with certain enumerated sections of the CWA. 33 U.S.C. § 1311(a); *see Ailor v. City of Maynardville, Tenn.*, 368 F.3d 587, 590 (6th Cir. 2004). Of these enumerated sections, section 402, 33 U.S.C. § 1342, which embodies the NPDES permit program, authorizes the discharge of pollutants subject to applicable requirements of the CWA, through NPDES permits. *See* 33 U.S.C. § 1342(a)(1) and (b)(1). "Generally speaking, the NPDES requires dischargers to obtain permits that place limits on the type and quantity of pollutants that can be released into the Nation's waters." *S. Fla. Water Mgmt. Dist. v. Miccosukee Tribe of Indians*, 541 U.S. 95, 102, 124 S.Ct. 1537, 158 L.Ed.2d 264 (2004). NPDES permits also require the holder to establish and maintain records; install, use, and maintain monitoring equipment or methods; and sample point source effluent. 33 U.S.C. § 1318(a)(4)(A).

While the U.S. Environmental Protection Agency ("U.S. EPA") is charged with administering the NPDES program, it is empowered to delegate this authority to individual states. 33 U.S.C. § 1342(b). Once the U.S. EPA approves a state's proposed NPDES program, U.S. EPA suspends its issuance of the NPDES permits as to discharges subject to the state program. 33 U.S.C. § 1342(c)(1). "Noncompliance with a permit constitutes a violation of the

(4:17CV1361)

[Clean Water] Act." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 175, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citing 33 U.S.C. § 1342(h)).

**B. Ohio's NPDES Program**

Ohio has established a federally approved NPDES program, administered by the Ohio Environmental Protection Agency ("OEPA"). ECF No. 1 at PageID#: 7, ¶ 30. *See Askins v. Ohio Dept. of Agriculture*, 809 F.3d 868, 871 (6th Cir. 2016). The OEPA issued a NPDES permit to Warren, a municipality in Trumbull County, Ohio, which owns and operates a publicly-owned treatment works ("POTW"). *Id.* at PageID#: 4, ¶¶ 12 – 13, PageID#: 8, ¶¶ 32 – 33. The NPDES permit authorizes the discharge of treated wastewater into Warren's POTW from industrial permit users, including Patriot. *Id.* at PageID#: 7 – 8, ¶¶ 26 – 35. The OEPA issued Patriot a permit to install and operate a water treatment facility designed to treat oil and gas waste. *Id.* at PageID#: 8, ¶ 37. The permit to install and operate a water treatment facility along with the NPDES permit allow Patriot, the owner and operator of a Centralized Waste Treatment Facility ("CWT Facility"), to process wastewater from oil and gas producers, and, later, discharge its treated effluent into the sewer system for subsequent treatment by Warren's POTW. *Id.* at PageID#: 4, ¶11; PageID#: 8, ¶ 32. Warren's POTW then disposes the effluent into the Mahoning River. *Id.* at PageID#: 9, ¶ 42.

To enforce general pretreatment regulations as required under the NPDES permit, Warren issued Administrative Orders ("AOs") to Patriot, that require that certain conditions be met, regarding the flow of industrial wastewater discharge into Warren's sewer system. *Id.* at PageID#: 10, ¶¶ 46 – 54; ECF No. 19 at PageID#: 290. The AOs limit Total Dissolved Solids ("TDS") levels to 50,000 mg/L for oil and gas flow, but do not provide an express limit for the

3

(4:17CV1361)

TDS levels in the total industrial flow.[1] ECF Nos. 1 at PageID#: 11, ¶¶ 51 52; 19 at PageID#: 294. Also, Patriot's AO and Warren's Local Ordinance 924.03 prohibit the discharge of "any wastewater containing any radioactive wastes or isotopes of such a half-life or concentration, which exceeds limits established by Warren in compliance with State or Federal regulations," but do not contain limits for radium-226, radium-228, or barium (an abundant inorganic chemical found in drilling fluid). *Id.* at PageID#: 12, ¶¶ 56 57.

### C. FreshWater's Allegations

FreshWater's Complaint contains eight counts, but only Counts Six, Seven, and Eight are at issue. ECF No. 18 at PageID#: 282. Counts Six through Eight allege Warren's failure to issue adequate control mechanisms and limits in its AOs issued to Patriot, as required under the NPDES permit. ECF No. 1 at PageID#: 20 39, ¶¶ 98 162.

Count Six alleges that Warren failed to issue adequate control mechanisms to regulate TDS levels from Patriot's oil and gas flow by failing to maintain and regulate compliance with the applicable pretreatment standards as required in Part II.BB.5 of its NPDES permit which incorporates requirements in OAC-3745-3-03(C)(1)(c). *Id.* at PageID#: 33 34, ¶¶ 143-450. Count Seven alleges that Warren is in violation of Warren's Local Ordinance 924.03, because Warren's AO to Patriot does not adequately regulate or monitor radionuclides. *Id.* at PageID#: 34 35, ¶¶ 151 55. Count Eight alleges that Warren failed to follow the waste load allocation

---

[1] TDS is a measurement of inorganic salts, organic matter, and other dissolved materials in water. ECF No. 1 at PageID#: 18, ¶ 90. TDS can increase the salinity and change ionic composition of water and the toxicity of individual ion, which can limit biodiversity, and pose challenges to reducing bromide levels. *Id.*

4

(4:17CV1361)

in its NPDES permit 3PE00008 section BB.4. by failing to issue local limits for barium in its AO to Patriot. *Id.* at PageID#: 36, ¶ 161.

With respect to these alleged violations, FreshWater asserts that the OEPA has issued several Notices of Violations ("NOVs") to Warren as a result of its noncompliance with the NPDES permit. *See id.* at PageID#: 13, ¶ 68 (In March 2015, Warren received an NOV for violations of the barium standards set forth in Part II.AA. of the NPDES Permit 3PE00008); *Id.* at PageID#: 14, ¶ 71 (following a Pretreatment Audit Inspection in June 2015, OEPA informed Warren that it was incorrectly regulating the Patriot Facility through its AO); *Id.* at PageID#: 15, ¶ 72 (In December 2016, OEPA issued a NOV for Warren violating Part II.BB.5 of its NPDES Permit 3PE00008, which required Warren to issue control mechanisms to industrial users that contained effluent limits based on the applicable pretreatment standards); *Id.* at PageID#: 13, ¶ 68 (OEPA issued Warren a last set of NOVs in June 2017. The NOVs found Warren violated its NPDES permit by exceeding limits for Total Suspended Solid ("TSS") [2] concentrations and loadings from January to March 2015 and failing to report required monthly samples for Dissolved Orthophosphates).

On April 25, 2017, FreshWater gave Defendants notice of the violations alleged in the Complaint, and its intent to file suit, prior to commencement of this action, pursuant to 33 U.S.C. § 1365(b). *Id.* at PageID#: 3, ¶ 6; ECF No. 1-2. FreshWater alleges that these violations will continue unless the relief requested is granted. ECF No. 1 at PageID#: 16, ¶ 82.

---

[2] TSS is a measurement of the total of organic materials and inorganic particles dispersed in water. High levels of TSS in surface waterbody can stress an ecosystem and adversely affect the health of fish populations. ECF No. 1 PageID#: 17, 18 ¶ 89.

5

(4:17CV1361)

Warren seeks to dismiss Counts Six, Seven, and Eight of the Complaint, based on a lack of subject matter jurisdiction and failure to state a claim.[3] ECF No. 18.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(1) allows dismissal for "lack of jurisdiction over the subject matter" of claims asserted in the complaint. Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of subject-matter jurisdiction may involve either facial attacks or factual attacks upon a court's jurisdiction. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). When resolving a facial attack, the reviewing court assumes the allegations within the complaint are true. *Id*. "Where, on the other hand, there is a factual attack on the subject-matter jurisdiction alleged in the complaint, no presumptive truthfulness applies to the allegations." *Id*. When reviewing a factual challenge, the court must weigh the conflicting evidence to determine whether subject-matter jurisdiction exists. *Howard v. Whitbeck*, 382 F.3d 633, 636 (6th Cir. 2004). The plaintiff bears the burden of establishing that jurisdiction exists. *Madison Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). Lack of subject-matter jurisdiction is a non-waivable, fatal defect. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990).

To survive a Fed. R. Civ. P.12(b)(6) motion to dismiss, a plaintiff's complaint must allege enough facts to "raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl.*

---

[3] Patriot has not filed a motion to dismiss.

(4:17CV1361)

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Fed. R. Civ. P. 8(a)(2) requires only that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint requires "further factual enhancement," which "state[s] a claim to relief that is plausible on its face." *Id.* at 557, 570. A claim has facial plausibility when there is enough factual content present to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When a claim lacks "plausibility in th[e] complaint," that cause of action fails to state a claim upon which relief can be granted. *Twombly*, U.S. 550 at 564.

### III. Analysis

#### A. Subject-Matter Jurisdiction

Defendant Warren contends that the CWA's citizen enforcement suit provision does not allow for suits against regulators for a failure to regulate. ECF No. 19 at PageID#: 303‒05.

Section 1365 of the CWA provides, in pertinent part:

Any citizen may commence a civil action on his own behalf

> (a)(1) against any person (including (I) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation.

33 U.S.C. § 1365(a)(1).

(4:17CV1361)

The CWA's citizen enforcement suit provision, set forth in 33 U.S.C. § 1365, prescribes parameters necessary to bring a civil action against a person who is alleged to be in violation of an "effluent standard or limitation" under the CWA, and notes that such actions are subject to citizen enforcement. 33 U.S.C. § 1365. The term "effluent standard or limitation" includes "a permit or condition thereof issued under the [NPDES program]." *Askins*, 809 F.3d at 872 (citing 33 U.S.C. § 1365(a)(1), (f)(6)).

Within these parameters, district courts have jurisdiction to enforce effluent standards or limitations and apply appropriate civil penalties under 33 U.S.C. § 1319(d). 33 U.S.C. § 1365(a); *Jones v. City of Lakeland, Tenn.*, 224 F.3d 518, 521 (6th Cir. 2000). Accordingly, any interested party that may be subject to adverse effects may sue to enforce a limitation established by an NPDES permit, subject to a few exceptions. 33 U.S.C. § 1365(a) and (g); *Ailor*, 368 F.3d at 590.

The Sixth Circuit has held that, "the plain and unambiguous language of 33 U.S.C. § 1365(a) precludes a citizen's suit only if the Administrator of the EPA or a State is diligently prosecuting an enforcement action in a court of the United States, or a State." *Id*. at 522. Accordingly, if the EPA, OEPA, or another regulatory agency have yet to bring an action against Patriot or Warren, a citizen suit is not prohibited. *Id*.

While the citizen suit provision is "critical" to the enforcement of the CWA, *see Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 152 (4th Cir. 2000) (en banc), as it allows citizens "to abate pollution when the government cannot or will not command compliance," *Gwaltney,* 484 U.S. at 62, 108 S.Ct. 376, " jurisdiction only exists when a citizen plaintiff makes a good faith allegation of a "continuous or intermittent violation." *Ailor*, 368 F.3d at 598 (quoting *Gwaltney of Smithfield v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 64

8

(4:17CV1361)

(1987)).  Citizen plaintiffs do not, therefore, have standing to seek a remedy for "wholly past violations." *Id.* at 590.

In the case at bar, Warren does not dispute that the U.S. EPA has delegated authority to Ohio to implement pretreatment programs within Ohio or that the OEPA has delegated pretreatment responsibilities to local governments.   ECF No. 19 at PageID#: 290.

Warren contends, however, that FreshWater lacks standing under Counts Six through Eight because citizen suits cannot be filed against regulators for an alleged failure to implement a specific regulation.  *Id*. at PageID#: 297.  Warren cites three cases to support its contention: (1) *Askins v. Ohio Dep't of Agric.*, 809 F.3d 868 (6th Cir. 2016), (2) *Bennet v. Spear*, 520 U.S. 154 (1997), and (3) *Sierra Club v. Korleski*, 681 F.3d 342 (6th Cir. 2012).  *Id.* at PageID#: 303‒04. In *Askins,* citizens brought suit for OEPA's alleged failure to regulate animal feeding operations and transferring its NPDES granted authority to ODA.  *Askins*, 809 F.3d at 870‒72.  The Sixth Circuit affirmed the trial court's dismissal, holding that, "the Clean Water Act does not permit citizen suits against regulators, who are not polluters, for procedural violations." *Id*. at 876. *Sierra Club* held that citizens lacked standing to file suit against the Director of OEPA for an alleged violation of the Clean Air Act.  *Sierra Club*, 681 F.3d at 344‒45.  In that case, the Sixth Circuit held that the Clean Air Act did not permit suits against state regulators for acting as regulators.  *Id.* at 351.  In *Bennet*, the Supreme Court held that a citizen suit under the Endangered Species Act was impermissible when the suit was based on the Secretary of the Interior's alleged failure to perform his duties as an administrator.  *Bennett*, 520 U.S. at 170.

(4:17CV1361)

Warren's authority is not persuasive because Warren is both a regulated entity and a regulator. By contrast, *Askins* held that the CWA "does not permit citizen suits against regulators, who are not polluters, for procedural violations." *Askins*, 809 F.3d at 876. Warren is in a hybrid position because it both regulates and pollutes. The NPDES permits issued to Warren, grants Warren the authority to issue industrial user permits for significant industrial users like Patriot. ECF Nos. 1 at PageID#: 8, ¶ 32–33;19 at PageID#: 290. At the same time, Warren's POTW treats the effluent that Patriot discharges, and after it treats the effluent, Warren discharges it into the Mahoning River. ECF Nos. 1 at PageID#: 9, ¶ 42; 19 at PageID#: 290. In so doing, Warren's POTW must comply with the discharge standards and limitations set forth in its NPDES permit. ECF No. 1 at PageID#: 7–8, ¶¶ 25–32. Accordingly, Warren, as a regulated entity, must enforce the limits and establish monitoring requirements set forth in its NPDES permit, through its AOs issued to Patriot. *See id.* at PageID #: 33–36.

FreshWater's claims stem from the wastewater discharge from Warren's POTW which is subject to the NPDES permit. *Id.* at PageID#: 7–8, ¶¶ 25–32. FreshWater contends that Warren's failure to adequately regulate the discharge from Patriot's CWT Facility causes Warren's discharge of pollutants to be above an acceptable level. In essence, FreshWater argues that Warren is in noncompliance with the NPDES permit because it has not properly regulated Patriot, and, as a result, Warren is unlawfully discharging certain pollutants into the Mahoning River. ECF No. 30 at PageID#: 369–373. In resolving this facial attack, the Court finds that Plaintiff has standing to bring a citizen suit. *See Askins*, 809 F.3d at 875 (noting that the CWA permits citizens to sue for violations of § 1342); *Ainsworth v. Cmty. Bible Church*, No. 1:10CV1964, 2012 WL 13076749, at *6–8 (N.D.Ga. Jul. 19, 2012) (holding that plaintiff had

(4:17CV1361)

standing to bring suit against county, in part, because county was not taking any action to enforce pollutant discharge requirements against private entities and county was then discharging those pollutants through its storm water system).

For these reasons, Warren's 12(b)(1) argument fails.

**B. Failure to State a Claim**

Warren asserts, pursuant to Federal Rule of Civil Procedure 12(b)(6), that Counts Six, Seven, and Eight of FreshWater's Complaint should be dismissed for failure to state a claim. ECF No. 18 at PageID#: 282. In particular, Warren contends that, Counts Six through Eight are FreshWater's "attempt to create and enforce permit obligations that simply do not exist." ECF No. 19 at PageID#: 297. The Court disagrees.

Under Counts Six and Seven, FreshWater alleges that Warren's NPDES permit 3PE00008 Part II.BB.5 requires Warren to: "issue control mechanisms to all industries determined to be Significant Industrial Users as defined in OAC 3745-3-01(FF)," and states that "[c]ontrol mechanisms must meet at least the minimum requirements of OAC-3745-3-03(C)(1)(c)." ECF No. 1 at PageID#: 33, ¶¶ 144–146; PageID#: 35, ¶ 154. FreshWater further asserts that, by its incorporation of OAC-3745-3-03(C)(1)(c), Warren's NPDES permit mandates that Warren's AO to Patriot at a minimum provide "effluent limits that are based on applicable general pretreatment standards in 40 C.F.R. § 403," and requirements for self-monitoring, including an identification of the pollutants to be monitored, which are also based on the

11

(4:17CV1361)

applicable general pretreatment standards of 40 C.F.R. § 403.[4] ECF No. 30 at PageID #: 363 64.

As to Count Six, the Complaint states that Warren's AO to Patriot fails to ensure Patriot's compliance with its TDS standard for its Oil and Gas flow, that is subject to a maximum strength of TDS of 50,000 mg/L, when there is one discharge stream for both TDS and Patriot's Industrial flow, which has no limitation on TDS strength. ECF No. 1 at PageID#: 34, ¶¶ 146 48. Warren retorts that its general prohibition on disruptions and pass through violations in Patriot's AO meet its requirement under Part II.BB.5 of its NPDES permit. ECF No. 19 at PageID#: 298. The Complaint, however, provides sufficient factual support to refute this argument, by alleging that "Patriot's discharge of effluent containing high-TDS levels has impaired the operation and efficiency of the Warren POTW and caused the Warren POTW to be in an ongoing state of significant noncompliance with its NPDES permit," and in turn, the CWA. ECF No. 1 at PageID#: 34, ¶ 148; *see* ECF No. 30 at PageID#: 364. Therefore, when taking the factual allegations as true, as the Court must, Count Six states a plausible claim.

With respect to Count Seven, FreshWater asserts that Warren has failed to issue an AO to Patriot that contains monitoring requirements for pollutants, including radionuclides, as required under OAC-3745-3-03(C)(1)(c). *Id.* at PageID#: 35, ¶ 155. The Complaint further alleges that Warren's NPDES permit mandates compliance with local and state laws, that includes Local Ordinance 924.03, which prohibits the discharge of "any wastewater containing any radioactive

---

[4] 40 C.F.R. § 403 pertains to when a POTW must develop "specific limits" on pollutants and "effectively enforce" specific limits to prohibit "any pollutant released in a Discharge at a flow rate and/or pollutant concentration that will cause interference with the POTW." ECF No. 30 at PageID#: 364 (citing 40 C.F.R. § 403.5(b)(4), (c)(1)).

12

(4:17CV1361)

wastes or isotopes of such halflife or concentration which exceed limits established by the City in compliance with applicable state or federal regulations." *Id.* at PageID#: 35, ¶ 152. Local Ordinance 924.03 references federal regulation, and 10 C.F.R.§ 20.2003 limits the discharge of radium.[5] ECF No. 30 at PageID #: 366 67. The Complaint specifically alleges that Marcellus and Utica shale wastewater contains high amounts of radium, among other pollutants, and that the Warren POTW is not equipped to process radioactive elements. *Id.* at PageID #: 367. Thus, FreshWater reasons, it has alleged a sufficiently plausible factual basis for Count Seven. *Id*. The Court agrees.

As to Count Eight, FreshWater alleges that Warren has created local limits for every pollutant listed in Part II.BB.4 of its NPDES permit, except barium. *Id.* at PageID #: 368 69. Part II.BB.4 requires Warren to "develop and enforce technically based local limits to prevent the introduction of pollutants into the POTW which will interfere with the operation of the POTW, pass through the treatment works, be incompatible with the treatment works, or limit wastewater or sludge use options." ECF No. 1 at PageID#: 35, ¶ 157. The Complaint plausibly alleges that Warren has failed to develop a local limit for barium, and remains in noncompliance with the preliminary effluent standard for barium contained in its NPDES permit 3PE00008. *Id.* at PageID#: 36, ¶ 160. FreshWater contends that Warren's failure to issue a local limit has resulted in the introduction of pollutants that are interfering with the operation of the POTW. *Id.* at ¶ 161. The Complaint further states that, this interference is evident through the elevated levels of

---

[5] 10 C.F.R. 20.1003 defines byproduct material as "any discrete source of radium-226 that is produced, extracted, or converted after extraction . . . ." 10 C.F.R. 20.1003(3)(i).

(4:17CV1361)

barium in Warren's POTW that are exceeding what is permissible under Warren's POTW NPDES permit. *Id.*; ECF No. 30 at PageID #: 369. Given that the purpose of a complaint is to plausibly assert a claim for relief, it is reasonable to read FreshWater's pleading as sufficiently alleging a violation of the CWA, due to the level of barium discharged into the water and Warren's inability to treat the discharge properly. *See* ECF No. 1 at PageID#: 35 36, ¶¶ 156 162.

The citizen suit enforcement mechanism is "one of the primary means" of interpreting the terms of NPDES permits. *Nat. Res. Council v. Metro. Water Reclamation Dist. of Greater Chicago*, 175 F.Supp.3d 1041, 1049 (N.D.Ill. 2016). And, a citizen suit is proper to determine whether a city has enforced its pretreatment program. *See Stephens v. Koch Foods, LLC*, 667 F.Supp.2d 768, 791 92 (E.D.Tenn. 2009) (denying city's claim for summary judgment for violation of the CWA, in part, because the actions the city took constituted enforcement of its pretreatment program).

In sum, Warren claims that FreshWater is seeking an order compelling Warren to revise its pretreatment program, but that is not a fair characterization. Instead, FreshWater is arguing that Warren is not sufficiently enforcing the regulations its permit references. In making these assertions, the Complaint allows the Court to make a reasonable inference that Patriot is discharging amounts of certain pollutants in excess. The parties have not had the benefit of completed discovery to review documents that could shed light on these issues. For this reason, the Court also finds the motion to dismiss premature. Because FreshWater has, at this stage,

(4:17CV1361)

alleged sufficient facts to withstand Warren's motion to dismiss, the motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), is denied.[6]

### IV. Conclusion

For the foregoing reasons, Warren's partial motion to dismiss (ECF No. 18) is denied in its entirety.

IT IS SO ORDERED.

| | |
|---|---|
|    July 13, 2018    |    /s/ Benita Y. Pearson    |
| Date | Benita Y. Pearson |
| | United States District Judge |

---

[6] Warren argues that FreshWater's authority is inapplicable, because the cases do not require an enforcement entity modify its pretreatment program to impose new limits and monitoring requirements. This misinterprets FreshWater's complaint. Although FreshWater seeks relief in the form of adding a requirement to the AO Warren has issued to Patriot, it is only to add something already legally required. That is different than conjuring something from anew. Rather, FreshWater is asking that Warren enforce that which it should already be enforcing. Therefore, the relief FreshWater seeks belies any suggestion of rulemaking, as the Court, in finding that FreshWater has sufficiently alleged that a violation exists, has the discretion to determine appropriate relief, at the later stage of litigation, if necessary. *See Ohio Valley Envtl. Coalition v. Fola Coal Company, LLC, 845 F.3d 133, 147 (4th Cir. 2017)* (holding that district court did not engage in rulemaking when it ordered defendant to take appropriate measures either to reduce conductivity in its discharges or to increase index score of a tributary and waterway adjacent to defendant's surface mining facility).