PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FRESHWATER ACCOUNTABILITY PROJECT, | ) | CASE NO. 4:17CV1361 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| PATRIOT WATER TREATMENT, LLC, *et al.*, | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Resolving ECF Nos. 44, 46] |

Pending are two motions for summary judgment by Defendants Patriot Water Treatment, LLC ("Patriot") and City of Warren, Ohio ("Warren") (collectively, "Defendants"). ECF Nos. 44, 46. The motions seek summary judgment against Plaintiff FreshWater Accountability Project ("FreshWater") on the ground that FreshWater does not have standing to sue. FreshWater opposed the motions, ECF No. 48, and Defendants replied, ECF No. 50. For the reasons stated below, the Court denies Defendants' motions.

**I. Background**

FreshWater, a non-profit environmental organization suing on behalf of its members, brought this action against Defendants Patriot Water Treatment, LLC ("Patriot") and Warren, under the citizen enforcement suit provision of the Clean Water Act ("CWA"), 33 U.S.C. § 1365. ECF No. 1. FreshWater seeks declaratory and injunctive relief, the assessment of civil penalties, and an award of litigation costs and fees for alleged violations of CWA. *Id.* at PageID#: 1, ¶ 1. FreshWater asserts that Defendants failed to comply with effluent limits and performance standards for industrial wastewater discharge under the National Pollution Discharge Elimination

(4:17CV1361)

System ("NPDES"), Permit No. 3PE00008, regarding the discharge of wastewaster pollutants into the waters of the State of Ohio. *Id.* at PageID#: 2, ¶¶ 2-3.

**A. Clean Water Act**

The objective of CWA, 33 U.S.C. § 1251 *et seq.*, is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To further this goal, CWA mandates that toxic discharges into the Nation's waterways be monitored and regulated and thus requires that dischargers comply with certain enumerated sections of CWA. 33 U.S.C. § 1311(a); *see Ailor v. City of Maynardville, Tenn.*, 368 F.3d 587, 590 (6th Cir. 2004). Of these enumerated sections, section 402, 33 U.S.C. § 1342, which embodies the NPDES permit program, authorizes the discharge of pollutants subject to applicable requirements of CWA, through NPDES permits. *See* 33 U.S.C. § 1342(a)(1) and (b)(1). "Generally speaking, the NPDES requires dischargers to obtain permits that place limits on the type and quantity of pollutants that can be released into the Nation's waters." *S. Fla. Water Mgmt. Dist. v. Miccosukee Tribe of Indians*, 541 U.S. 95, 102 (2004). NPDES permits also require the holder to establish and maintain records; install, use, and maintain monitoring equipment or methods; and sample point source effluent. 33 U.S.C. § 1318(a)(4)(A).

While the U.S. Environmental Protection Agency ("U.S. EPA") is charged with administering the NPDES program, it is empowered to delegate this authority to individual states. 33 U.S.C. § 1342(b). Once the U.S. EPA approves a state's proposed NPDES program, U.S. EPA suspends its issuance of the NPDES permits as to discharges subject to the state program. 33 U.S.C. § 1342(c)(1). "Noncompliance with a permit constitutes a violation of the

2

(4:17CV1361)

[Clean Water] Act." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 175 (2000) (citing 33 U.S.C. § 1342(h)).

**B. Ohio's NPDES Program**

Ohio has established a federally approved NPDES program, administered by the Ohio Environmental Protection Agency ("OEPA"). ECF No. 1 at PageID#: 7, ¶ 30. *See Askins v. Ohio Dept. of Agriculture*, 809 F.3d 868, 871 (6th Cir. 2016). The OEPA issued a NPDES permit to Warren, a municipality in Trumbull County, Ohio, which owns and operates a publicly-owned treatment works ("POTW"). *Id.* at PageID#: 4, ¶¶ 12-13, PageID#: 8, ¶¶ 32-33. The NPDES permit authorizes the discharge of treated wastewater into Warren's POTW from industrial permit users, including Patriot. *Id.* at PageID#: 7-8, ¶¶ 26-35. The OEPA issued Patriot a permit to install and operate a water treatment facility designed to treat oil and gas waste. *Id.* at PageID#: 8, ¶ 37. The permit to install and operate a water treatment facility along with the NPDES permit allow Patriot, the owner and operator of a Centralized Waste Treatment Facility ("CWT Facility"), to process wastewater from oil and gas producers, and, later, discharge its treated effluent into the sewer system for subsequent treatment by Warren's POTW. *Id.* at PageID#: 4, ¶11; PageID#: 8, ¶ 32. Warren's POTW then disposes the effluent into the Mahoning River. *Id.* at PageID#: 9, ¶ 42.

To enforce general pretreatment regulations as required under the NPDES permit, Warren issued Administrative Orders ("AOs") to Patriot, that require that certain conditions be met, regarding the flow of industrial wastewater discharge into Warren's sewer system. *Id.* at PageID#: 10, ¶¶ 46-54; ECF No. 19 at PageID#: 290. The AOs limit Total Dissolved Solids ("TDS") levels to 50,000 mg/L for oil and gas flow, but do not provide an express limit for the

3

TDS levels in the total industrial flow.[1]  ECF Nos. 1 at PageID#: 11, ¶¶ 51-52; 19 at PageID#: 294.  Also, Patriot's AO and Warren's Local Ordinance 924.03 prohibit the discharge of "any wastewater containing any radioactive wastes or isotopes of such a half-life or concentration, which exceeds limits established by Warren in compliance with State or Federal regulations," but do not contain limits for radium-226, radium-228, or barium (an abundant inorganic chemical found in drilling fluid).  Id. at PageID#: 12, ¶¶ 56-57.

### C.  Defendants' Motions for Summary Judgment

Defendants Patriot and Warren move the Court to enter summary judgment against FreshWater on the ground that FreshWater does not have standing to sue—that is, that the litigation did not present a true "case" or "controversy" within the meaning of Article III, Section 2, of the U.S. Constitution, and the Court therefore lacks subject-matter jurisdiction over the dispute.  Three types of "standing" are relevant to Defendants' motions: (1) prudential standing, see Assoc. Of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 153 (1970); (2) organizational standing, see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 181 (2000); and (3) constitutional standing, see Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).

Defendants argue that FreshWater does not have standing to sue because (1) its lawsuit is not authorized by CWA; (2) it does not demonstrate that it has any members who are affected by Defendants' water-treatment operation; (3) even if it does have affected members, those

---

[1] TDS (total dissolved solids) is a measurement of inorganic salts, organic matter, and other dissolved materials in water.  ECF No. 1 at PageID#: 18, ¶ 90.  TDS can increase the salinity and change ionic composition of water and the toxicity of individual ion, which can limit biodiversity, and pose challenges to reducing bromide levels.  Id.

members do not demonstrate any injury in fact; (4) even if it does have injured members, their injuries were not caused by Defendants' water-treatment operation; and (5) even if it does have injured members whose injuries were so caused, their injuries are not redressable through judicial action.  ECF Nos. 44, 46.

## II.  Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial."  *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute.  An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury."[2]  *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  "[I]n

---

[2] FreshWater demands a jury trial.  ECF No. 1 at PageID#: 1.  Patriot denies that Freshwater is entitled to a jury trial on all issues, ECF No. 17 at PageID#: 278, and Warren takes no position on the issue in its answer, *see* ECF No. 16.  Whether

(continued...)

response to a summary judgment motion, a plaintiff cannot rely on 'mere allegations' with respect to each standing element, 'but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true.'" *McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016) (quoting *Lujan*, 504 U.S. at 561) (internal quotation marks omitted).

A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Scott v. Harris*, 550 U.S. 372, 380 (2007). To determine whether a factual dispute is "genuine," the Court assesses whether the evidence is such that a reasonable jury could find that the non-moving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[S]ummary judgment . . . will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.") *Id.* If a factual dispute regarding the plaintiff's standing persists through trial, that dispute is resolved by a jury. *Lujan*, 504 U.S. at 561.

### III. Law and Analysis

It is the plaintiff's burden to satisfy the court of its jurisdiction over the matter. *Lujan*, 504 U.S. at 561. Because standing is "an indispensable part of the plaintiff's case" that must be proved with evidence, *id.*, a standing-based challenge is necessarily more rigorous at the summary-judgment stage than, say, at the 12(b)(6) motion-to-dismiss stage. *Compare United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 687-90 (1973) (standing satisfied at 12(b)(6) stage because plaintiff's members *claimed to use and enjoy*

---

[2](...continued)
FreshWater is entitled to a jury trial is not before the Court in these motions, *see* ECF Nos. 44, 46, and the Court makes no ruling on the issue in this Order. Any reference to a "jury" in this Order refers to the ultimate factfinder, whether that is a jury or the Court.

(4:17CV1361)

the national parks in Washington, D.C., area), *with Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972) (standing not satisfied at summary-judgment stage because plaintiff could not prove that any of its members *actually used and enjoyed* Mineral King Valley and Sequoia National Park).

In this case, both summary judgment motions were filed well before discovery was complete.[3]  As a result, FreshWater was necessarily limited in the type and quantity of evidence it could put forward to resist summary judgment.  The parties did not file a joint stipulation of facts.

### A.  Admissibility of Expert Affidavits

Typically, when standing is at issue, it should be decided first.  In this case, resolving the questions on standing requires the Court to first determine whether the affidavits of purported experts are admissible.  *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998). To support its opposition to summary judgment, FreshWater cites four affidavits, specifically, those of standing witness Thomas Smith (ECF No. 43-3), FreshWater Managing Director Leatra Harper (ECF No. 48-1), natural-resources expert Even Hansen (ECF No. 48-2), and environmental-science expert Marc Glass (ECF No. 48-3).  In their joint reply to FreshWater's opposition, Defendants ask the Court to strike the Hansen and Glass affidavits because, they argue, those affidavits do not conform with the requirements of Fed. R. Civ. Pro. 56.  ECF No. 50 at PageID#: 630-32.

---

[3] According to the Court's Order issued on January 25, 2018, the fact discovery cutoff was to occur on July 5, 2018; the cutoff date for Plaintiff's expert reports was May 3, 2018; the cutoff date for Defendants' expert reports was May 31, 2018; and responsive reports were due on June 4, 2018, and July 2, 2018, respectively.  That schedule has since been enlarged.  ECF No. 55.  Defendants' motions were filed on April 4, 2018, and April 11, 2018, respectively.  ECF Nos. 44, 46.

Defendants advance two arguments in support of that request, both arising under Rule 56(c)(4). Pursuant to Rule 56(c)(4), a court may only consider evidence at the summary-judgment stage that will ultimately be admissible at trial. Defendants argue that the Hansen and Glass affidavits are not admissible evidence because, first, Hansen and Glass have not been qualified as experts under Fed. R. Evid. 702, and, second, the Hansen and Glass affidavits are not based on "personal knowledge," as that term is used in Fed. R. Civ. Pro. 56(c)(4). The Court addresses each argument in turn. Neither is well taken.

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999), Rule 702 imposes on the Court an obligation to ensure that all expert testimony is both relevant and reliable. For that reason, the Court must ensure an expert witness is qualified before allowing the jury to hear his testimony. Expert testimony is admissible only if the expert's purported qualifications survive the rigors of the Court's Rule 702 inquiry.

That kind of analysis should be imitated when assessing admissibility for purposes of Rule 56(c)(4), but ordinarily it cannot be perfectly replicated. Rule 56(c)(4) is not a perfect substitute for adversarial motion practice. If Defendants genuinely took issue with Hansen and Glass's expert qualifications, they could have pointed to specific concerns about their expertise or methodology. They remain entitled to challenge Hansen and Glass's qualifications through motions *in limine* as proceedings continue.

For the moment, however, the Court finds nothing objectionable about Hansen and Glass being presented as experts. According to the facts stated in their affidavits, both are well-educated and experienced in their respective fields, and both their fields are relevant to the

litigation. *See* ECF No. 48-2 at PageID#: 616, ¶¶ 1-3; ECF No. 48-3 at PageID#: 621, ¶¶ 1-3.

Both Hansen and Glass familiarized themselves with appropriate literature. ECF No. 48-2 at

PageID#: 616-17, ¶¶ 4-6, ECF No. 48-3 at PageID#: 621-22, ¶¶ 4, 7, 8. Defendants do not

challenge their education, expertise, or methodology—they simply charge that "the legitimacy of

their expertise has not been explored." ECF No. 50 at PageID#: 631. For purposes of

admissibility under Rule 56(c)(4), the Court tentatively rules that Hansen and Glass are experts in

their respective fields.

Defendants also argue that, even if Hansen and Glass are experts, their affidavits should

nevertheless be stricken because they are not based on "personal knowledge." *See* Fed. R. Civ.

Pro. 56(c)(4). They assert that the Hansen and Glass affidavits "are really 'expert' opinions

masquerading as factual testimony." ECF No. 50 at PageID#: 631. They cite three cases from

the Sixth Circuit, all suggesting that affidavits must be stricken if based on "statement[s] of

belief."[4] ECF No. 50 at PageID#: 631.

To equate expert testimony with a "statement of belief" misapprehends the nature of

expert testimony.

> In applying the standard requirements for affidavits or declarations, 'personal
> knowledge' for experts does not mean that the expert must have the type of
> proximity, familiarity, or involvement with the facts that would ordinarily be
> expected of a percipient witness. Rather, the expert must have actually engaged in
> an examination of the case and its issues but may, unlike a fact witness, rely on

---

[4] The cases cited by Defendants have nothing to do with expert testimony. *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007); *Ondo v. City of Cleveland*, 795 F.3d 597, 604 (6th Cir. 2015); and *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 593 (6th Cir. 2009) discuss lay witness attestations in which the affiant testified based on "belief" or "personal knowledge and belief."

posited facts or on inadmissible material (such as scholarly work or empirical data that is technically hearsay) . . . .

Moore's Federal Practice - Civil § 56.94 (2018). The Sixth Circuit agrees. In *Monks v. Gen. Elec. Co.*, a products liability claim about a military helicopter, an expert affidavit was admissible at the summary-judgment stage because the expert "based his conclusions on depositions, government documents, official Army reports, and historical data of the helicopter." 919 F.2d 1189, 1192 (6th Cir. 1990). The court in *Monks* emphasized that an expert, in contrast to a lay witness, gains "personal knowledge" for purposes of Rule 56(c)(4) by familiarizing himself with the record and other relevant materials. *Id.* A contrary conclusion would seemingly eliminate expert testimony from summary-judgment briefing altogether.

In this case, both Hansen and Glass familiarized themselves with the record and other relevant material, thereby gaining the personal knowledge necessary to testify, and they applied their education and professional experience to arrive at a conclusion. ECF No. 48-2 at PageID#: 616-17, ¶¶ 4-6, ECF No. 48-3 at PageID#: 621-22, ¶¶ 4, 7, 8. The Court will therefore consider the expert affidavits.

**B. Standing**

Defendants raise several arguments to support its position that FreshWater lacks standing to sue. Its arguments fall into three categories: (1) challenging "prudential standing," (2) challenging "organizational standing," and (3) challenging "constitutional standing."

**1. Prudential Standing**

An individual plaintiff may sue under a federal statute only if Congress creates a private right of action. *See Alexander v. Sandoval*, 532 U.S. 275, 279-80 (2001). Even when Congress

unequivocally creates a private right of action, a plaintiff may maintain a lawsuit only if her interest is "is arguably within the zone of interests to be protected or regulated by the statute . . . in question." *Data Processing*, 397 U.S. at 153.

In its reply brief, Patriot argues that, although CWA authorizes citizens to maintain a private right of action for a violation of an "effluent standard or limitation," 33 U.S.C. § 1365(a)(1)(A), FreshWater nevertheless lacks standing because it does not identify any "effluent standard or limitation" that Patriot has violated. ECF No. 50 at PageID#: 633. Patriot did not raise this argument in its motion. *See* ECF No. 44. "The Sixth Circuit repeatedly has recognized that arguments raised for the first time in a party's reply brief are waived." *United States v. 2007 BMW 335i Convertible, VIN:WBAWL73547PX47374*, 648 F. Supp. 2d 944, 952 (N.D. Ohio 2009) (quoting *Irwin Seating Co. v. Int'l Bus. Machs. Corp.*, 2007 WL 518866, at *2 n.2 (W.D. Mich. Feb. 15, 2007).

In any event, Patriot's argument is unpersuasive. CWA authorizes individuals to act as private attorneys general, *Sierra Club v. Pena*, 915 F. Supp. 2d 1381, 1392 (N.D. Ohio 1996), "to abate pollution when the government cannot or will not command compliance." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 62 (1987). Patriot is a regulated entity that discharges effluent into the Mahoning River. *See* ECF No. 1-4. By the terms of the AO governing Patriot's discharges, "Patriot Energy Partners, LLC shall comply with

the effluent limitations, monitoring requirements, and reporting requirements for **Oil and Gas** as follows: [table specifying limits on pollutant limits]." *Id.* at PageID#: 79-80.[5]

Whether Patriot in fact exceeded its allowable effluent limits is a merits question, but Patriot is wrong to suggest that CWA does not provide a statutory basis for FreshWater's lawsuit. CWA authorizes private plaintiffs to sue regulated entities when they allege a "violation of . . . an effluent standard or limitation." 33 U.S.C. § 1365(a)(1)(A). Perhaps more to the point, CWA authorizes lawsuits by private plaintiffs when they allege a "violation of . . . an order issued by the Administrator or a State with respect to such a standard or limitation." *Id.* § 1365(a)(1)(B).

Given CWA's expansive citizen-suit provision and the express effluent limitations placed on Patriot by the Warren AO, the Court rules that FreshWater's interest in enforcing Warren and Patriot's effluent discharge is well within the "zone of interests" protected by CWA.

### 2. Organizational Standing

Defendants argue that FreshWater lacks standing to sue on behalf of its members. ECF No. 44 at PageID#: 554-55. "An association has standing to bring suit on behalf of its members when [1] its members would otherwise have standing to sue in their own right, [2] the interests at stake are germane to the organization's purpose, and [3] neither the claim asserted nor the relief

---

[5] It also reads, "Patriot Energy Partners, LLC shall comply with the effluent limitations, monitoring requirements, and reporting requirements for **Industrial** as follows: [table]. . . . Patriot Energy Partners LLC is limited on the daily discharge of **100,000 Gallons of Oil and Gas flow with Total Dissolved Solids (TDS) at a maximum strength of 50,000 mg/L**. These limitations are based on the permit conditions in PTI 748163." *Id*. at PageID#: 79-80.

requested requires the participation of individual members in the lawsuit." *Laidlaw*, 528 U.S. at 181.

FreshWater presents one standing witness, Thomas Smith. *See* ECF No. 43-3. Defendants posit that FreshWater fails *Laidlaw*'s organizational-standing test for the following reasons: (1) Thomas Smith is not a FreshWater member, (2) Smith could not otherwise sue in his own right,[6] and (3) the interests at stake in this litigation are not germane to FreshWater's purpose. ECF Nos. 44, 46.

First, is Smith a FreshWater member, and was he a member at the time this lawsuit was initiated? *See Laidlaw*, 528 U.S. at 189. Defendants argue that Smith is not a member of FreshWater because, in his deposition, he produced no documents to prove his membership, and he does not pay membership dues. ECF No. 44 at PageID#: 556. They also suggest Smith is not a member because, according to his deposition testimony, he has never been to a FreshWater meeting, he does not know how many members FreshWater has, he does not know the names of any of the organization's officers, and he has not recreated with any other FreshWater members. *Id.*

FreshWater counters with two affidavits. In Smith's affidavit, he attests, "I am a member of FreshWater Accountability Project, which I joined in 2017." ECF No. 43-3 at PageID#: 547. FreshWater also submits an affidavit of Leatra Harper, the founder and managing director of FreshWater. ECF No. 48-1. She attests, "As Managing Director of FreshWater Accountability

---

[6] This argument is addressed below, under the heading "Constitutional Standing."

Project, it is known to me that Thomas Smith of Girard, Ohio is a member of FreshWater Accountability Project." *Id.* at PageID#: 608.

"[F]or purposes of the summary judgment motion," the content of a plaintiff's affidavit of standing "will be taken to be true." *McKay*, 823 F.3d at 867 (quoting *Lujan*, 504 U.S. at 561). At most, Defendants' contentions give rise to a factual dispute, which at this stage must be resolved in FreshWater's favor.

Defendants further contend that, even if Smith is a FreshWater member now, he was not a FreshWater member at the commencement of the litigation. *See Laidlaw*, 528 U.S. at 189. The lawsuit commenced on June 27, 2018. ECF No. 1. Attached to the Complaint was Smith's affidavit of standing. ECF No. 1-3. In his deposition, Smith testified that he believes he became FreshWater member in Spring 2017, and that he was contacted about pursuing litigation against Defendants a month or two after becoming a member. ECF No. 42-1 at PageID#: 450. Defendants are entitled to try to persuade a jury that Smith was not in fact a FreshWater member on June 27, 2018, *see Lujan*, 504 U.S. at 561 (allegations of standing must be "supported adequately by the evidence adduced at trial"), but at the very least, its contentions create a genuine dispute of material fact, which must be resolved in FreshWater's favor at this stage.

Next, Defendants contend that FreshWater lacks organizational standing because its lone standing witness, Thomas Smith, would not have standing to sue in his own right. ECF No. 44 at PageID#: 557-564; ECF No. 46; *see Laidlaw*, 528 U.S. at 181. This argument is addressed below, under the heading "Constitutional Standing."

Finally, Defendants argue that FreshWater lacks organizational standing because it has not proved that the interests at stake in the litigation are germane to FreshWater's purpose. ECF No. 44 at PageID#: 564-65; *see Laidlaw*, 528 U.S. at 181. In her affidavit, FreshWater's founder and managing director attests that "FreshWater Accountability Project exists for the purpose of protecting Ohio's natural resources for future generations. ECF No. 48-1 at PageID#: 608. In his deposition, Smith testified that FreshWater's purpose is "to protect waters from being polluted and that kind of thing."[7] ECF No. 42-1 at PageID#: 447. In this litigation, FreshWater asks the Court to declare that Defendants have unlawfully polluted the Mahoning River and to enjoin them from continuing to do so. ECF No. 1 at PageID#: 36-37. The Court rules that FreshWater's stated purpose is germane to that goal.

### 3. Constitutional Standing

Defendants' final argument is that FreshWater lacks standing to sue because its sole standing witness, Thomas Smith, does not meet the "irreducible minimum" requirements of Article III, and therefore, the Court is constitutionally unable to entertain the lawsuit. Constitutional standing has three requirements: (1) the plaintiff must have suffered a "concrete and particularized," "actual or imminent" injury in fact, (2) that injury must be "fairly traceable" to the defendants' conduct, and (3) it must be "likely . . . that the injury will be redressed by a

---

[7] Defendants argue that "'[p]rotecting waters from being polluted' is merely a generalized grievance that does not give rise to standing." ECF No. 44 at PageID#: 565. That argument confuses the issues. Whether "protecting waters from being polluted" is a "generalized grievance" pertains to whether FreshWater has suffered an injury in fact, discussed at length in the "constitutional standing" analysis. Such an argument does not pertain to the question whether an organization's purpose is germane to any given litigation.

favorable [judicial] decision." *Lujan*, 504 U.S. at 561.  Defendants challenge FreshWater on all three grounds.  ECF No. 44.

### a. Injury in Fact and Causation

FreshWater posits that Smith has suffered four cognizable injuries, including two recreational injuries, one aesthetic injury, and one reputational injury.  ECF No. 48 at PageID#: 594-602.  Specifically, it argues that Defendants' discharges injure Smith in that he feels he can no longer kayak in parts of the Mahoning River, he feels he can no longer swim in the River, he risks losing the ability to observe wildlife in the River because of the River's high TDS levels, and the River's reputation risks being damaged.  *Id.*

In his affidavit and deposition, Smith states that his recreational interest has been harmed because he is disinclined to go kayaking in the part of the River near the discharge site.[8]  ECF No. 42-1 at PageID#: 511, 516; *see* ECF No. 43-3 at PageID#: 549, ¶ 25.  Article III recognizes such recreational injuries.  *See Laidlaw*, 528 U.S. at 181-83.  In *Laidlaw*, the Supreme Court recognized injury in fact for one standing witness because "he would like to fish, camp, swim, and picnic in and near the river between 3 and 15 miles downstream from the facility, as he did when he was a teenager, but would not do so because he was concerned that the water was polluted by Laidlaw's discharges."  *Id.* at 181-82.  It recognized injury for another standing

---

[8] Defendants suggest that this injury allegation pertains only to Warren, not Patriot, because Smith associates his kayaking concern with the discharge from the Warren POTW discharges.  ECF No. 50 at PageID#: 640.  That distinction obscures the relationship between Patriot and Warren.  Warren's POTW treats the effluent that Patriot discharges, and after it treats the effluent, Warren discharges it into the Mahoning River.  ECF No. 1 at PageID#: 9, ¶ 42; ECF No. 19 at PageID#: 290.  Warren's discharge is Patriot's discharge.  Smith's injury allegation applies to both Defendants.

witness because "he would like to fish in the river at a specific spot he used as a boy, but that he would not do so now because of his concerns about Laidlaw's discharges." *Id.* at 182.

Defendants argue that Smith's injury is more attenuated than the standing witnesses' injuries in *Laidlaw* because he has never kayaked in that portion of the Mahoning River anyway. ECF No. 50 at PageID#: 640-41. They argue, in essence, that Smith has no cognizable interest in kayaking the portion of the River near the discharge site because he has never done so in the past.[9] The standing witnesses in *Laidlaw*, they say, were injured by the defendant's river discharge because they were forced to give up something they already had. *Id.* at PageID#: 641. Defendants are mistaken, however. In *Laidlaw*, the Supreme Court recognized one standing witness's injury because "he had canoed approximately 40 miles downstream of the Laidlaw facility and would like to canoe in the North Tyger River closer to Laidlaw's discharge point, but did not do so because he was concerned that the water contained harmful pollutants." *Laidlaw*, 528 U.S. at 183. Taking Smith's attestations as true, the facts in this case are indistinguishable from the facts in *Laidlaw*. Accordingly, the Court finds that FreshWater's standing witness Thomas Smith has suffered an injury in fact, fairly traceable to Defendants' discharges.

The Court also finds that Smith is injured by the risk to his ability to observe wildlife and aquatic life.[10] Smith testified that the high TDS rates in the Mahoning River caused by

---

[9] In his deposition, Smith said, "That's one section of the river that I hadn't [kayaked] yet; and, I wanted to do it, but when I found out about [the pollution], I obviously didn't want to do it." ECF No. 42-1 at PageID#: 516.

[10] Defendants distinguish between "wildlife" and "aquatic life" but do not explain why such a distinction would be relevant to the standing inquiry. ECF No. 50 at

(continued...)

Defendants' discharges would harm the River's aquatic life, and FreshWater argues that Smith would be harmed in turn by his diminished ability to observe fish and other animals. *See* ECF No. 42-1 at PageID#: 470; ECF No. 48 at PageID#: 596-97. FreshWater supports its theory with expert attestations. *See* ECF Nos. 48-2; 48-3. In his affidavit, Evan Hansen explains that increased TDS level can have "adverse impacts to aquatic life, including reduced rates of fertilization for minnows" and "hinder reproduction by suffocating eggs and larvae or otherwise disrupting essential habitat." ECF No. 48-2 at PageID#: 618, ¶¶ 23, 28. He also explains that "[i]ncreases in ammonia," also discharged by Defendants into the Mahoning River, "can lead to toxic buildup in the blood and tissues of aquatic organisms, decreasing their health, and potentially causing death." *Id.* at PageID#: 619, ¶¶ 32-33.

The Supreme Court has recognized precisely this kind of aesthetic injury. *See Lujan*, 504 U.S. at 562-63 ("Of course, the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing."). Defendants do not contend that Smith does not "use or observe" aquatic species in the Mahoning River. Instead, they argue that Smith's stated injury is "speculative," not "actual or imminent." ECF No. 50 at PageID#: 642-43.

---

[10](...continued)
PageID#: 643. The Court declines to draw the distinction. In any case, even if the ability to observe aquatic life were somehow less valuable than the ability to observe other animal life, the distinction would not matter because, according to FreshWater's expert affidavit, certain harmful elements can "bioaccumulate up the food chain." ECF No. 48-3 at PageID#: 622, ¶ 13.

The Court disagrees.  It is true that FreshWater presents no evidence that the River's aquatic life has *actually* diminished.  But the Hansen affidavit persuasively suggests that harm to the River's aquatic life (and thus, aesthetic injury to Smith) is imminent.  Whereas harm to minnows "can occur at TDS levels as low as 275 mg/L," downstream TDS levels in the River "regularly exceed 300 mg/L" and "have been measured as high as 780 mg/L."  ECF No. 48-2 at PageID#: 618, ¶¶ 22-23.  Hansen also attests that, based on the material he has reviewed, "Patriot is . . . the largest contributor of total dissolved solids (TDS) from significant industrial users discharging to the Warren POTW.  TDS coming from Patriot is in extremely high concentrations."  ECF No. 48-2 at PageID#: 617, ¶ 2.  Taken as true, FreshWater's affidavits set out specific allegations that create a genuine dispute of material fact about whether Smith's posited aesthetic injury, fairly traceable to Defendants' alleged unlawful discharges into the Mahoning River, is imminent.  *See Lujan*, 504 U.S. at 561; *cf. Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (injury-in-fact requirement can sometimes be satisfied by showing risk of future harm or harm that is difficult to prove or measure).

The Court finds that, at this stage of proceedings, Smith satisfies the injury-in-fact obligation.  It is therefore unnecessary to decide whether his other stated injuries give rise to constitutional standing.

### b. Redressability

Defendants argue that, even if Smith has suffered an injury in fact, fairly traceable to Defendants' conduct, that injury is not redressable in this litigation.  ECF No. 50 at PageID#:

644-46.  Neither an injunction nor imposition of civil penalties, they argue, would cure Smith's injuries.

First, Defendants argue that, because Patriot is not currently operating and has not operated since before the commencement of this litigation, an injunction would accomplish nothing.[11] *Id.* at PageID#: 645 ("[T]here is no injunctive relief that this Court can issue that would redress the now-terminated discharge.").  In this argument, the doctrines of standing and mootness converge.

Voluntary cessation of allegedly unlawful activity does not always moot an injunctive lawsuit.  In *Laidlaw*, the wastewater-facility defendant shut down during the pendency of the lawsuit.  528 U.S. at 193.  The Supreme Court noted that "[t]he facility closure . . . might moot the case," but only if its cessation "made it absolutely clear that Laidlaw's permit violations could not reasonably be expected to recur."  *Id.* (litigation persisted despite the defendant's mootness argument).  The voluntary-cessation exception is a commonsense carve-out of the mootness doctrine.  If a defendant could terminate the litigation against it simply by closing its doors for a week or a year with no guarantees of permanent cessation of unlawful activity, it would be impossible for any plaintiff to obtain lasting relief.  Defendants state that Patriot "is not operating" and "has not operated since before [FreshWater] filed its lawsuit."  ECF No. 50 at PageID#: 645.  Defendants give no assurances that Patriot's cessation is anything but temporary.  Their argument therefore fails.

---

[11] This argument was also raised for the first time in Defendants' reply brief. Going forward, the Court advises Defendants that failure to raise arguments in a motion or opposition will be treated as waiver of those arguments.

Second, Defendants contend that it would do FreshWater's members no good to enjoin Defendants from "exceeding their permit limits" because Warren "does not have any permit limit for salt/TDS."[12]  *Id.* at PageID#: 645.  This argument mischaracterizes FreshWater's prayers for relief.  FreshWater asks the Court to "[e]njoin Defendants from further violations of the Clean Water Act," to "issue [an] injunction that prevents Patriot from discharging to the Warren POTW until such operation is lawful . . ." and to "require . . . [that] Warren issue an Administrative Order requiring radiological testing to be conducted on Patriot's discharge into the Warren Sewer . . . ."  ECF No. 1 at PageID#: 36-37.  FreshWater's Complaint does not narrowly ask the Court to enjoin Defendants from "exceeding their permit limits," as Defendants suggest.  Both Defendants are regulated entities, and FreshWater seeks to enforce Defendants' statutory and regulatory obligations.  FreshWater's claim is not rendered irredressable by Defendants' narrow characterization.

Finally, Defendants argue that Smith (and, therefore, FreshWater) has no standing to pursue civil penalties because such penalties would not redress his injuries.  Penalties are paid to the government, not to litigants.  ECF No. 50 at PageID#: 645-46.  Again, however, Defendants' argument runs contrary to the Supreme Court's ruling in *Laidlaw*.  In *Laidlaw*, citizen plaintiffs had standing to pursue civil penalties against a polluter under CWA.  528 U.S. at 185-86.  Civil penalties do not compensate private plaintiffs, the Court reasoned, but they do deter defendants from persisting in unlawful, injurious conduct.  *Id.* at 185.  "It can scarcely be doubted that, for a

_____

[12] To the extent this contention is really an argument that FreshWater fails to state a claim on which relief can be granted, the Court has already denied such a motion as to Warren, *see* ECF No. 59, and Patriot has not filed any such motion.

plaintiff who is injured or faces the threat of future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress." *Id.* at 185-86.

Defendants fail to show that Thomas Smith has not suffered one or more injuries in fact, fairly traceable to Defendants' allegedly unlawful conduct, which would be redressable by a favorable judicial decision. For that reason, the Court rules that Thomas Smith meets the constitutional requirements of Article III, and he is well positioned to sue Defendants for his injuries in his own right.

## IV. Conclusion

Because FreshWater's interests in this litigation are "arguably within the zone of interests" protected by CWA, it has "prudential standing" to sue Defendants. Because FreshWater presents admissible evidence showing that Thomas Smith is a FreshWater member and that Thomas Smith is constitutionally positioned to sue Defendants in his own right, FreshWater has "organizational standing" to sue Defendants for their alleged violations of CWA. For those reasons, the Court rules that Defendants' motions for summary judgment (ECF Nos. 44, 46) are denied.


IT IS SO ORDERED.


__October 9, 2018_____          ___/s/ *Benita Y. Pearson*_____
Date                                 Benita Y. Pearson
                                     United States District Judge